SAMUEL D. HARRIS, PLAINTIFF IN ERROR vs. JAMES DENNIE.

Twenty-three cases of silk were imported from Canton in the ship Rob Roy into the port of Boston, consigned to George D'Wolf and John Smith. After the arrival of the vessel with the merchandize on board, the collector caused an inspector of the customs to be placed on board. Soon afterwards, and prior to the entry of the merchandize, and prior to the payment or any security for the payment of the duties thereon, the merchandize was attached by the deputy sheriff of the county, in due form of law, as the property of G. D'Wolf and J. Smith, by virtue of several writs of attachment issued from the court of common pleas for the county of Suffolk, at the suit of creditors of G. D'Wolf and Smith. These attachments were so made prior to the inspector's being sent on board the vessel. At the time of the attachment, the sheriff offered to give security for the payment of the duties on the merchandize, which the collector declined accepting. The merchandize was sent to the custom-house stores by the inspector, and several days after, the custom house store keeper gave to the deputy sheriff an agreement signed by him, reciting the receipt of the merchandize from the inspector; and stating, "I hold the said merchandize to the order of James Dennie, deputy sheriff." The marshal of the United States afterwards attached, took, and sold the merchandize under writs and process, in favour of the United States, against George D'Wolf; which writs were founded on duty bonds, due and unpaid, for a larger amount than the value of the merchandize, given before by D'Wolf and Smith; who, before the importation of the merchandize, were indebted to the United States on various bonds for duties, besides those on which the suits were instituted. Held, that the attachments issued out of the court of common pleas of the county of Suffolk, did not affect the rights of the United States to hold the merchandize until the payment of the duties upon them; and that the merchandize was not liable to any attachment by an officer of the state of Massachusetts, for debts due to other creditors of George D'Wolf and John Smith.

It has often been decided in this court, that it is not necessary that it shall appear, in terms, upon the record, that the question was presented in the state court, whether the case was within the purview of the twenty-fifth section of the judicial act of 1789, to give jurisdiction to this court in a case removed from a state court. It is sufficient, if, from the facts stated, such a question must have arisen, and the judgment of the state courts would not have been what it is, if there had not been a misconstruction of some act of congress, &c. &c. or a decision against the validity of the right, title, privilege or exemption set up under it. [301]

The United States have no general lien on merchandize, the property of the importer, for duties due by him upon other importations. The only effect of the first provision in the sixty-second section of the act of 1799, ch. 128, is that the delinquent debtor is denied at the custom house any *further credit* for *duties* until his unsatisfied bonds are paid. He is compellable to pay the duties in cash, and upon such payment he is entitled to the delivery of the goods im-

[Harris *vs.* Dennie.]

ported. The manifest intention of the remaining clause in the section, is to compel the original consignee to enter the goods imported by him. [302].

No person but the owner or original consignee, or in his absence or sickness, his agent or factor, is entitled to enter the goods at the custom house, or give bond for the duties, or to pay the duties (sect. 36 and 62). Upon the entry the original invoices are to be produced and sworn to; and the whole objects of the act would be defeated by allowing a mere stranger to make the entry, or take the oath prescribed on the entry. [304]

The United States having a lien on goods imported for the payment of the duties accruing on them, and which have not been secured by bond; and being entitled to the custody of them from the time of their arrival in port until the duties are paid or secured; any attachment by a state officer is an interference with such lien and right to custody; and, being repugnant to the laws of the United States, is void. [305]

The acknowledgement by the custom house store keeper, that he holds goods, upon which the duties have not been secured or paid, subject to an attachment issued out of a state court at the suit of a creditor of the importer, was a plain departure from his duty, and is not authorised by the law of the United States, and cannot be admitted to vary the rights of the parties. [305]

WRIT of error to the supreme judicial court of Massachusetts, for the counties of Suffolk and Nantucket.

In the court of common pleas of the county of Suffolk, Massachusetts, James Dennie, the defendant in error, a deputy sheriff of that county, under a precept issued by the authority of the state, attached twenty-three cases of silks imported in the brig Rob Roy, from Canton, for a debt due by the importers and owners of the goods, George D'Wolf and James Smith. Soon after the arrival of the vessel, the collector of the port caused an inspector of the customs to be placed on board. The attachment was made before the entry of the merchandize, and payment made or security given for the payment of the duties thereon, and before an inspector was put on board the vessel. At the time of the attachment, the plaintiff offered to give the collector security for the payment of the duties to the United States, which he declined to accept. About seventeen days after the attachment, the merchandize being in the custom house stores, under the following agreement, to wit, "District of Boston and Charleston, port of Boston, August 29th 1826. I certify that there has been received into store, from on board the brig Rob Roy, whereof —— —— is master, from Canton, the following merchandize, to wit, twenty three cases silks, A. O. 1 to 23, lodged by D. Rhodes, Jun. inspector, under whose care the

vessel was unladen. B. H. Scott, public store-keeper. I hold the above described twenty-three cases silks subject to the order of James Dennie, Esq. deputy sheriff. B. H. Scott;" the defendant, being the marshal of the United States for the district of Massachusetts, attached and took the same merchandize, by virtue of several writs in favour of the United States against D'Wolf, duly issued from the district court of the United States. These writs were founded upon bonds for duties given by D'Wolf and Smith, amounting to a sum much larger than the value of the merchandize, which duties were due and unpaid when the merchandize arrived.

The deputy sheriff, James Dennie, brought an action of trover against the marshal for the goods; and the judgment of the supreme judicial court of the state, to which the case was removed by writ of error from the inferior court, was in favour of the original plaintiff; and the defendant prosecuted this writ of error.

The following errors were assigned in the supreme judicial court of Massachusetts: that, according to the true construction of the several acts of the congress of the United States, imposing duties on certain goods, wares and merchandize imported into the United States from foreign ports, and also of the act of said congress made and passed on the 2d day of March 1799, entitled "an act to regulate the collection of duties on imposts and tonnage:" it is contended,

1. That upon the arrival of the said merchandize in question at the port of Boston and Charleston, and prior to the supposed attachment thereof by the said Dennie, a debt immediately accrued to the United States for the amount of the duties thereon; and the collector for said port had therefore a legal lien on the said merchandize for the debt aforesaid; and consequently they were not then subject to the said Dennie's attachment aforesaid.

2. That the offer of the said Dennie, at the time of making his said attachment, to give to the said collector security for the payment of the duties on said merchandize, did not in point of law give validity to the said attachment; inasmuch as the said collector was not at that time, it being prior to any entry of the merchandize at the custom house, au-

thorised by law to receive security from the said Dennie, or any other person or persons whomsoever, for payment of the duties aforesaid.

3. That after the said merchandize was placed in the custom house store, as is found by the special verdict, and from that period to the time when they are stated to have been attached in behalf of the United States by the said Harris, as marshal of said district, the legal lien of the United States constantly remained with them; and that the certificate of B. H. Scott, the store-keeper, which appears in the said verdict, can have had no effect to discharge or in any degree to impair the force of the said lien.

4. That by the provisions contained in the sixty-second section of the aforesaid act of March 2, 1799, the goods in question, the same having been imported by and consigned to George D'Wolf and John Smith, as by said verdict is found, are in point of law to be considered as their property, so far as to be holden liable for the payment of all the debts then due from them to the United States for duties on merchandize heretofore imported by them into the said port of Boston and Charleston.

It was also in this court contended, that the defendant in error had no property, either absolute or special, nor possession, nor the right of possession in the goods, which were the object of the supposed trover and conversion in the declaration mentioned.

The case was argued by Mr Berrien, attorney general, and Mr Dunlap, district attorney of the United States for the district of Massachusetts, for the plaintiff in error; and by Mr Webster, for the defendant.

For the plaintiff in error, Mr Dunlap stated, that the position contended for in the state court was, that under the revenue law the government of the United States has a lien on goods imported, not only for the duties accruing on that importation, but also for the payment of all debts due from the consignees arising from antecedent importations. This question, he admitted, had since been disposed of against the United States. Conrad *vs.* The Atlantic Ins. Com. 1 Peters,

[Harris *vs.* Dennie.]

386. It is supposed that the great question in the cause now before the court is, whether goods imported can, before entry at the custom house, and while under the lien of the government, in possession of the custom house officers, be legally attached by virtue of process from a state court. Such an attachment, it is claimed, is not only void by the laws of the United States, but also by the laws of the state of Massachusetts; and therefore the defendant in error did not by the process obtain any property or right of possession in the goods, which could enable him to maintain an action of trover.

The laws of the United States provide, that goods imported shall, until entered at the custom house, be taken into the possession of the officers of the government, and after a certain time be deposited in the custom house stores; and afterwards, a further time having expired, if they have not been entered by or for the importer, they are to be sold according to the thirty-sixth and fifty-sixth sections of the act of March 3, 1799.

An attachment, at the suit of any creditor of the importer, upon goods thus situated, would interfere with and destroy the possession and lien of the government, thus secured by law. Such an attachment, thus interfering with rights thus given, is the exercise of " an authority under a state," which " is repugnant to the laws of the United States." The exercise of such an authority is in opposition to the exemption claimed to exist in favour of those goods from such process, and is a defence for the marshal of the United States to this action of trover by the deputy sheriff. This case is therefore one properly within the action of the ninety-fifth section of the judiciary law; and is well brought before this court to reverse the judgment of the supreme judicial court of Massachusetts.

The attachment from the state court is void, as well by the laws and adjudged cases of Massachusetts, as by the laws of the United States. A statute of the state, if it interfered with a law of the general government in reference to subjects within its legitimate operation, would be void; but no such law, in reference to the proceedings and claims of the defendant in error, is to be found. To constitute a legal

[Harris *vs.* Dennie.]

attachment of goods, they must be taken within the actual or constructive possession of the officer; and when this cannot be done, on account of the existence of prior liens, or from any other cause, no attachment can be valid. The decisions in the state of Massachusetts fully sustain this position. Phillips *vs.* Badger, 11 Mass. 247. Bedlam *vs.* Tucker et al. 1 Pick. 389. Watson *vs.* Todd et al. 5 Mass. Rep. 271.

In Pierce *vs.* Jackson, 6 Mass. Rep. 242, the court say that when goods are attached, they must be seized under execution within thirty days, or the lien of the judgment is gone. The goods in the custom house stores could not have been sold under any process. Cited, Vinton *vs.* Bradford, 15 Mass. 114. Lane *vs.* Jackson, 5 Mass. 157, decides that the officer must have the actual possession and custody of the goods. Cited also, Odiorne *vs.* Polley, 2 New Hamp. Rep. 66. Also, 2 New Hamp. Rep. 317. Holbrook *vs.* Blake, 5 Greenleaf's Rep. 371. 6 Conn. Rep. 356. 1 Shower, 169. Vin. Ab. Distress, E. 2. H. 42. H. 52.

The effect of the acknowledgement of the store keeper could not be to vest a property in the goods in the deputy sheriff. It was unauthorized; and the store keeper had nothing to dispose of. He was the agent of the United States, to protect and preserve the property while in the public stores; and he could not divest himself of these relations, and become the bailee of the sheriff.

If the sheriff had no right to make the attachment, he acquired by it either a general or a special property, which is necessary in order to maintain trover; and in fact he never had the actual possession of the goods. The only title he asserts is, as an officer by virtue of the attachment; and if that is adjudged illegal and void, the foundation of his action fails. 2 Saunders's Rep. 47. 7 T. R. 9.

Mr Webster for the defendant contended; that this court has no jurisdiction of the case, according to the provisions of the judiciary law.

It is not required that it should appear, in form, that an act of congress has been misconstrued; if it has been sub-

stantially the fact, it is sufficient to give the writ of error to the highest state tribunal. But it does not appear in any part of this record, that such was the proceeding in the supreme judicial court of Massachusetts.

The question originally raised in this case was, whether the United States had a general lien on goods imported for debts due to them by the importer; and that question has, since this action was brought, been decided in the negative in Conrad *vs.* the Atlantic Insurance Company. The only question remaining in this case was, whether the goods were liable to attachment, and this was a question properly for the decision of the state courts. The United States claimed to attach and hold the goods for the debts due to them by D'Wolf and Smith, and the other creditors of those persons denied this claim, and proceeded by an attachment. The United States stood in no other relations and with no other rights before the state court than the other creditors. In the state court, and upon the state decisions, the attachment for the creditors was considered valid. This is an answer to the argument, that such is not the law of Massachusetts. This decision does not therefore bring into question the construction of any act of congress.

Mr Berrien, attorney general, in reply, argued : that there was enough in the record to show that a question of the application of a statute of the United States was decided by the supreme judicial court of Massachusetts ; and this would sustain the jurisdiction, although it may not have been the only question in the case. 2 Wheat. 363. 1 Wheat. 304.

This is an action of trover against an officer of the United States, the marshal, for taking goods out of the hands of an alleged bailee, for a debt due to the United States ; and the question is, was there then an existing lien in favour of the United States under the sixty-second section of the duty act ?

The construction of this statute was thus brought into question, by the inquiry whether there was a conversion by the marshal. He says, that his proceedings were under the authority of the law ; and it was therefore essential that the state court should decide upon the law, and construe the law.

[Harris vs. Dennie.]

2. In an action of trover and conversion, the plaintiff must show property, and a right to retain it.

The goods were in the possession of the custom house, and subject to duties which were unpaid. It was necessary that the court should decide, that goods, before the payment of the duties, can be taken out of the possession of the custom house by the process of state courts. This question is to be decided by a reference to the laws of the United States.

Such an exercise of power would be inconsistent with the provisions of the laws of the United States.

The position which is asserted by the plaintiff in error, is that goods so situated are exempt from such process.

The plaintiff in the state court contended; that they could be taken under the authority of the state of Massachusetts; and this was the assertion of a claim of authority under a state, against the laws of the United States.

Upon these grounds it is manifest that the construction of the laws of the United States immediately entered into the question before the state court. It must appear to this court, 1. That the goods were liable to be attached. 2. That there is nothing in the laws of the United States which prevents this. 3. That the United States had no lien on the goods. All these points must be decided in favour of the plaintiff below, before it can be held that the marshal was guilty of a conversion.

Mr Justice Story delivered the opinion of the court:

This is a writ of error to the judgment of the supreme judicial court of the state of Massachusetts.

The original action was trover; brought by the defendant in error against the plaintiff in error, for twenty-three cases of silk, which had been attached by Dennie, as deputy sheriff of the county of Suffolk, and afterwards attached by Harris, as marshal of the district of Massachusetts. The cause was tried upon the general issue, and a special verdict found, upon which the state court rendered judgment in favour of the original plaintiff.

The special verdict was as follows. The jury find that

the merchandize described in the declaration was brought in a vessel of the United States into the port of Boston, in the collection district of Boston and Charleston in Massachusetts, from a foreign port, prior to the commencement of this action. That the said merchandize came consigned to George D'Wolf and John Smith, as was evidenced by the manifest of the cargo of the said vessel at the time of the importation. That soon after the arrival of the said vessel with the merchandize on board, as aforesaid, the collector of the said port caused an inspector of the custom house to be placed on board thereof, in conformity with the requirements of law in such cases. That soon after the arrival of the said vessel, and prior to the entry of the said merchandize with the collector, and prior to the payment or any security for the payment of the duties thereupon, the same were attached in due form of law as the property of the said George D'Wolf and John Smith, by virtue of several writs of attachment issued from the court of common pleas for the said county of Suffolk, in favour of Andrew Blanchard and others; the said attachment having been made by the plaintiff in his capacity of a deputy of the sheriff of the aforesaid county of Suffolk, prior to the inspector's being put on board, as aforesaid. That at the time of the said attachment, the said sheriff offered to give to said collector security for the payment of the duties upon the said merchandize, which the said collector declined to accept. That about seventeen days subsequently to the time of the attachment, the said merchandize being in the custom house stores, under the following agreement, viz: " District of Boston and Charleston, port of Boston, August 29th 1826. I certify that there has been received in store, from on board the brig Rob Roy, whereof ———— ———— is master, from Canton, the following merchandize, viz : twenty-three cases of silk, A. O. 1 to 23, lodged by D. Rhodes, Jun. inspector, and under whose care the vessel was unladen. (Signed) B. H. Scott, public store-keeper. I hold the above twenty-three cases of silks subject to order of James Dennie, deputy sheriff. (Signed) B. H. Scott." The defendant (Harris) being marshal, &c. attached the said merchandize, and took the same, by virtue of several writs to

[Harris *vs.* Dennie.]

him directed, in favour of the United States, against the s D'Wolf; which writs were duly issued from the district cour. of the United States for the district of Massachusetts ; *which writs were founded on bonds for duties theretofore given by the said D'Wolf and Smith,* and which bonds were then due and unpaid, being for a large sum of money. That the said D'Wolf and Smith, at the time of the said importation of the merchandize aforesaid, were jointly and severally indebted to the United States on various other bonds for duties, besides those on which the writs aforesaid were instituted, which said first mentioned bonds were also then due and unsatisfied; and that the bonds for duties above referred to, and upon which the attachment by the said marshal was made, amounted to a much larger sum than the value of the merchandize thus attached. But whether or not, &c. &c. in the common form of special verdicts.

As this case comes from a state court, under the twenty-fifth section of the judiciary act of 1789, ch. 20, it is necessary to consider, whether this court can entertain any jurisdiction thereof, consistently with the terms of that enactment. That section, among other things, enacts that a final judgment of the highest state court may be revised, where is drawn in question the validity of a statute of, or an authority exercised under, any state on the ground of their being repugnant to the constitution, treaties, or laws of the United States, and the decision is in favour of their validity; or where is drawn in question the construction of any clause of the constitution, or of a treaty, or statute of, or commission held under the United States, and the decision is against the title, right, privilege or exemption specially set up, or claimed by either party, under such clause of the said constitution, treaty, statute or commission.

The objection is, that this court has not jurisdiction of this case, because it does not appear upon the record that any question within the purview of the twenty-fifth section arose in the state court upon the decision on the special verdict. But it has been often decided in this court, that it is not necessary that it should appear, in terms, upon the record, that any such question was made. It is sufficient, if from the

facts stated such a question must have arisen, and the judgment of the state court would not have been what it is, if there had not been a misconstruction of some act of congress, &c. &c. or a decision against the validity of the right, title, privilege or exemption set up under it. 4 Wheat. 311. 12 Wheat. 117. 2 Peters's Rep. 245, 380; 409.

In the present case it is contended, that the United States, by virtue of the sixty-second section of the Revenue Collection Act of 1799, ch. 128, had a lien on the present merchandize for all debts antecedently due on custom house bonds by D'Wolf and Smith, and that consequently the attachment of the marshal overreached that of the private creditors, and that the state court have decided against such lien. If there be no such lien, still it is contended, that under the provisions of the Revenue Collection Act of 1799, ch. 128, the merchandize was not liable to attachment at the suit of any private creditors under the circumstances; and that the state court in giving judgment for the plaintiff, must have overruled that defence, and misconstrued the act.

The question as to the lien of the United States for duties antecedently due, was certainly presented by the special verdict. But we are all of opinion, that the decision of the state court, disallowing such a lien, was certainly correct.

The sixty-second section of the act of 1799, ch. 128, after providing for the manner of paying duties, and of giving bonds for duties, and the terms of credit to be allowed therefor, goes on to provide, "that no person whose bond has been received, either as principal or surety, for the payment of duties, or for whom any bond has been given by an agent, factor or other person in pursuance of the provisions herein contained, and which bond may be due and unsatisfied, shall be allowed a *future credit for duties*, until such bond be fully paid or discharged." The only effect of this provision is, that the delinquent debtor is denied at the custom house any *future credit for duties*, until his unsatisfied bonds are paid. He is compellable to pay the duties in cash; and upon such payment he is entitled to the delivery of the goods imported. There is not the slightest suggestion in the clause, that the United States shall have any lien on such

goods for any duties due on any other goods, for which the importer has given bonds, and for which he is a delinquent. It was at once perceived by congress, that the salutary effect of this provision, denying credit upon duties, would be defeated by artifices and evasions, and the substitution of new owners or consignees after the arrival of the goods in port, and before the entry thereof at the custom house. To repress such contrivances, the next succeeding clause of the act provides, "that to prevent frauds arising from collusive transfers, it is hereby declared that all goods, &c. imported into the United States, shall, *for the purposes of this act*, be deemed and held to be the property of the persons to whom the said goods, &c. may be consigned, any sale, transfer or assignment prior to the entry and payment, or securing the payment, of the duties on the said goods, &c. and the payment of all bonds then due and unsatisfied by the said consignee, to the contrary notwithstanding." The manifest intent of this clause was to compel the original consignee to enter the goods; and if he was a delinquent, to compel him to pay his prior bonds, or to relinquish all credit for the duties accruing upon the goods so imported and consigned to him. It does not purport to create any lien upon such goods for any duties due upon other goods; but merely ascertains who shall be deemed the owner, for the purpose of entering the goods and securing the duties. The state court, therefore, did not, so far as this question is concerned, misconstrue the act of congress, or deny any right of the United States existing under it.

The other point is one of far more importance; and, in our opinion, deserves a serious consideration. If, consistently with the laws of the United States, goods in the predicament of the present were not liable to any attachment by a state officer, it is very clear that the present suit could not be sustained, and that judgment ought to have been given upon the special verdict in favour of the original defendant. And in our opinion these goods were not liable to such an attachment. In examining the Revenue Collection Act of 1799, ch. 128, it will be found, that numerous provisions have been solicitously introduced, in order to prevent

any unlivery, or removal of any goods imported from any foreign port in any vessel arriving in the United States, until after a permit shall have been obtained from the proper officer of the customs for that purpose. These provisions not only apply to vessels which have already arrived in port, but to those which are within four leagues of the coast of the United States. The sections of the act, from the twenty-seventh to the fifty-eighth, are in a great measure addressed to this subject. From the moment of their arrival in port, the goods are, in legal contemplation, in the custody of the United States; and every proceeding which interferes with, or obstructs or controls that custody, is a virtual violation of the provisions of the act. Now, an attachment of such goods by a state officer, presupposes a right to take the possession and custody of those goods, and to make such possession and custody exclusive. If the officer attaches upon mesne process, he has a right to hold the possession to answer the exigency of that process. If he attaches upon an execution, he is bound to sell or may sell the goods within a limited period, and thus virtually displace the custody of the United States. The act of congress recognizes no such authority, and admits of no such exercise of right.

No person but the owner or consignee, or, in his absence or sickness, his agent or factor in his name, is entitled to enter the goods at the custom house, or give bond for the duties or pay the duties. (Sect. 36, 62.) Upon the entry the original invoices are to be produced and sworn to; and the whole objects of the act would be defeated by allowing a mere stranger to make the entry, or take the oath prescribed on the entry. The sheriff is in no just or legal sense the owner or consignee; (and he must, to have the benefit of the act, be the *original* consignee;) or the agent or factor of the owner or consignee. He is a mere stranger, acting in invitum. He cannot then enter the goods, or claim a right to pay the duties, or procure a permit to unlade them; for such permit is allowed in favour only of the party making the entry, and paying or giving bond for the duties. (Sect. 49, 50.) If within the number of days allowed by law for unlading the cargo the duties are not paid or secured, the

goods are required to be placed in the government stores, under the custody and possession of the government officers. And at the expiration of nine months, the goods so stored are to be sold, if the duties thereon have not been previously paid or secured. (Sect. 56.)

It is plain that these proceedings are at war with the notion that any state officer can, in the interval, have any possession or right to control the disposition of these goods; and the United States have no where recognized or provided for a concurrent possession or custody by any such officer. In short, the United States having a lien on the goods for the payment of the duties accruing thereon, and being entitled to a virtual custody of them from the time of their arrival in port until the duties are paid or secured, any attachment by a state officer is an interference with such lien and right of custody; and being repugnant to the laws of the United States, is void.

It has been suggested, that the certificate of the store keeper, declaring that he held the silks subject to the order of the attaching officer, might vary the application of this doctrine. But such an agreement was a plain departure from the duty of the store keeper; and was unauthorized by the laws of the United States. It cannot, then, be admitted to vary the rights of the parties. See fifty-sixth section of the act of 1799, ch. 128.

This view of the subject renders it wholly unnecessary to consider the point, so elaborately argued at the bar, whether by the laws of Massachusetts an attachment would lie in such a case. If it would, the present attachment would not be helped thereby; because it involves an interference with the regulations prescribed by congress on the subject of imported goods.

Upon the whole, it is the unanimous opinion of the court, that the judgment of the state court ought to be reversed; and that a mandate issue to that court, with directions to enter judgment upon the special verdict, in favour of the original defendant.

[Harris *vs.* Dennie.

.This cause came on to be heard on the transcript of the record from the supreme judicial court of the commonwealth of Massachusetts, and was argued by counsel; on consideration whereof, it is the opinion of this court, that the goods in the special verdict mentioned, were not by the laws of the United States, under the circumstances mentioned in the said verdict, liable to be attached by the said Dennie upon the process in the said verdict mentioned; but that the said attachment so made by him as aforesaid, was repugnant to the laws of the United States, and therefore utterly void. It is therefore considered and adjudged by this court, that the judgment of the said supreme judicial court of Massachusetts rendered upon the said verdict be, and the same is hereby reversed, and that a mandate issue to that court with directions to enter a judgment upon the said verdict in favour of the original defendant, Samuel D. Harris; and that such further proceedings be had in said cause as to law and justice may appertain.