30 U.S. 248 (____)
5 Pet. 248
THE LESSOR OF JOHN FISHER, PLAINTIFF IN ERROR
vs.
WILLIAM COCKERELL, DEFENDANT IN ERROR.
Supreme Court of United States.

*251 Mr Wickliffe. for the defendant in error.
Mr Jones for the plaintiff in error.
*252 Mr Chief Justice MARSHALL delivered the opinion of the Court.
This is a writ of error to a judgment of the court of appeals of Kentucky, affirming a judgment of the Union circuit court of that state.
The plaintiff brought an ejectment in the Union circuit court against the defendant, and in June term 1823 obtained judgment; on which a writ of habere facias possessionem was awarded. On the succeeding day it was ordered on the motion of the defendant, "that Josiah Williams and others be, and they are hereby appointed commissioners, who, or any five of whom, being first sworn, do, on the second Saturday in July next, go on the lands from which the said defendant has been evicted in that action, and made assessment of what damage and waste the said defendant has committed since the 20th of May 1822, and the rent and profit accruing since the 17th of June 1823, and of the value of improvements made on said land at the time of such assessment, regarding it as if such improvement had not been made; all which they shall separately and distinctly specify, and report to the next term of this court, until which time this motion is continued."
*253 The report of the commissioners was made to the September term following, and was continued. On the 15th of March 1824 it was, on the motion of the defendant, ordered to be recorded. The improvements were valued at one thousand three hundred and fifty dollars. John Fisher, the plaintiff in the ejectment, and defendant on this motion, did not appear; and judgment was rendered against him for the sum reported to be due for improvements. Afterwards, to wit, on the 20th of the same month, the said Fisher appeared and tendered the following bill of exceptions, which was signed: "be it remembered, that in this cause the defendant moved the court to quash the report of the commissioners appointed to value the improvements, assess the damages, &c., but the court refused to quash the same, to which opinion of the court the defendant excepts," &c. The said Fisher then appealed to the court of appeals.
A citation was issued by the clerk of the court of appeals, which was served. Among the errors assigned by the plaintiff in error was the following: "The plaintiff deriving title from Virginia, the act or acts of the state of Kentucky on which this court has founded its opinion is repugnant as to the compact with Virginia; therefore void as to the case before the court, being against the constitution of the United States."
The cause was argued in the court of appeals in June 1827, and the judgment of the circuit court was affirmed. That judgment is now brought before this court by a writ of error.
The seventh article of the compact between Virginia and Kentucky is in these words. "That all private rights and interests of lands within the said district, derived from the laws of Virginia, prior to such separation, shall remain valid and secure under the laws of the proposed state, and shall be determined by the laws now existing in this state."
This is the article, the violation of which is alleged by the plaintiff in error. To bring his case within its protection, he must show that the title he asserts is derived from the laws of Virginia prior to the separation of the two states. If the title be not so derived, the compact does not extend to it; and the plaintiff alleges no other error.
The judgment in the ejectment is rendered on a general verdict, and the title of the plaintiff is not made a part of the *254 record by a bill of exceptions, or in any other manner. The clerk certifies that certain documents were read in evidence on the trial and among these is the patent under which the plaintiff claimed. This patent was issued by the governor of Kentucky, and is founded on rights derived from the laws of Virginia. Can the court notice it? Can it be considered as part of the record.
In cases at common law, the course of the court has been uniform not to consider any paper as part of the record which is not made so by the pleadings, or by some opinion of the court referring to it. This rule is common to all courts exercising appellate jurisdiction, according to the course of the common law. The appellate court cannot know what evidence was given to the jury, unless it be spread on the record in proper legal manner. The unauthorized certificate of the clerk that any document was read, or any evidence given, to the jury, cannot make that document or that evidence a part of the record, so as to bring it to the cognizance of this court. We cannot perceive, then, from the record in the ejectment cause, that the plaintiff in error claimed under a title derived from the laws of Virginia.
The order made after the rendition of the judgment, directing commissioners to go on the land from which the defendants had been evicted, and value the improvements, contains no allusion to the title under which the land was recovered.
The plaintiff in error might have resisted this order, by showing that his title was derived from the laws of Virginia, and thus have spread his patent on the record. He has not done so.
On moving to quash the report of the commissioners, a fair occasion was again presented for making his patent the foundation of his motion, and thus exhibiting a title derived from the laws of Virginia. He has not availed himself of it. He has made his motion in general terms, assigning no reason for it. The judgment of the court overruling the motion is also in general terms.
The record, then, of the Union circuit court does not show that the case is protected by the compact between Virginia and Kentucky. This court cannot know judicially that it was not a contest between two citizens, each claiming entirely under the laws of that state.
*255 When the record of the Union circuit court was transferred to the court of appeals, the course of that court requires that the appellant, or the plaintiff in error, should assign the errors on which he means to rely. This assignment contains the first intimation that the title was derived from Virginia, and that the plaintiff in error relied on the compact between the two states.
But this assignment does not introduce the error into the record, or in any manner alter it. The court of appeals was not confined to the inquiry whether the error assigned was valid in point of law. The preliminary inquiry was whether it existed in the record. If upon examining the record that court could not discover that the plaintiff had asserted any right or interest in land derived from the laws of Virginia, the question, whether the occupying claimants' law violated the compact between the states, could not arise.
The twenty-fifth section of the act to establish the judicial courts of the United States, which gives to this court the power of revising certain judgments of state courts, limits that power in these words. "But no other error shall be assigned or regarded as a ground of reversal in any such case as aforesaid than such as appears on the face of the record, and immediately respects the before mentioned questions of validity or construction of the said constitution, treaties, statute, commissions or authorities in dispute."
If the view which has been taken of the record be correct, it does not show that the compact with Virginia was involved in the case. Consequently, the question whether the act for the benefit of occupying claimants was valid or not does not appear to have arisen; and nothing is shown on the record which can give jurisdiction to this court.
The counsel for the plaintiff in error has referred to former decisions of this court, laying down the general principle, that the title under a treaty or law of the United States need not be specially pleaded; that it need not be stated on the record that a construction has been put on a treaty or law which this court may deem erroneous; or that an unconstitutional statute of a state has been held to be constitutional. It is sufficient, if the record shows that such misconstruction must have taken place or the decision could not have been made. Harris vs. Dennie, 3 Peters, 292, is a *256 strong case to this effect. That case recognizes the principle on which the plaintiff in error relies; and says "it is sufficient if from the facts stated such a question must have arisen, and the judgment of the state court would not have been what it is if there had not been a misconstruction from some act of congress, &c. &c. &c." but this misconstruction must appear from the facts stated, and those facts can be stated only on the record.
In the case of Harris vs. Dennie a special verdict was found, and the court confined itself to a consideration of the facts stated in that verdict. Goods, in the custody of the United States until the duties should be secured, and a permit granted for their being landed, were attached by a state officer at the suit of a private creditor. This fact was found in the special verdict, and the state court sustained the attachment. This court reviewed the act of congress for regulating the collection of duties on imports and tonnage, and came to the opinion "that the goods in the special verdict mentioned were not by the laws of the United States, under the circumstances mentioned in the said verdict liable to be attached by the said Dennie under the process in the said suit mentioned; but that the said attachment so made by him, as aforesaid, was repugnant to the laws of the United States, and therefore utterly void." In this case no fact was noticed by the court which did not appear in the special verdict.
So in the case of Craig et al. vs. The State of Missouri. The parties in conformity with a law of that state dispensed with a jury, and referred the facts as well as law to the court. The court, in its judgment, stated the facts on which that judgment was founded. It appeared from this statement that the note on which the action was brought was given to secure the repayment of certain loan office certificates, which a majority of the court deemed bills of credit in the sense of the constitution. This statement of facts made by the court of the state, in its judgment in a case in which the court was substituted for a jury, was thought equivalent to a special verdict. In this case too the court looked only at the record.
We say with confidence that this court has never taken jurisdiction, unless the case as stated in the record was brought within the provisions of the twenty-fifth section of the judicial act. There are some cases in which the jurisdiction of *257 the court has been negatived, that are entitled to notice. Owings vs. Norwood's Lessee, 5 Cr. 344, was an ejectment brought in the general court of Maryland for a tract of land lying in Baltimore county. The defendant set up as a bar to the action, an outstanding title in a British subject, which, he contended, was protected by the treaty of peace. Judgment was given for the plaintiff, and this judgment being affirmed in the court of appeals, was brought before this court. The judgment was affirmed; and the court said "whenever a right grows out of or is protected by a treaty, it is sanctioned against all the laws and judicial decisions of the states; and, whoever may have this right, it is to be protected: but if the party's title is not affected by the treaty, if he claims nothing under a treaty, his title cannot be affected by the treaty."
Upon the same principle the person who would claim the benefit of the compact between Virginia and Kentucky must show, and he can only show it on the record, that his case is within that compact.
The case of Miller vs. Nicholls, 4 Wheat. 312, bears, we think, a strong resemblance to this. William Nicholls collector, &c. being indebted to the United States, executed on the 9th of June 1798, a mortgage to Henry Miller for the use of the United States for the sum of fifty-nine thousand four hundred and forty-four dollars, conditioned for the payment of twenty-nine thousand two hundred and seventy-one dollars. Process was issued on this mortgage from the supreme court of the state of Pennsylvania; in March 1802, a levdri facias was levied, the property sold, and the money, amounting to fourteen thousand five hundred and thirty dollars, brought into court, and deposited with the prothonotary subject to the order of the court.
On the 22d of December 1797, the said Nicholls was found, on a settlement, indebted to the commonwealth of Pennsylvania in the sum of nine thousand nine hundred and eighty-seven dollars and fifteen cents, and judgment therefor was entered on the 6th of September 1798. These facts were stated in a case agreed; and the following question was submitted to the court: "Whether the said settlement of the said public accounts of the said William Nicholls, as aforesaid, on the 22d of Dec. 1797, was and is a lien from the date thereof, on the *258 real estate of the said William Nicholls, and which has since been sold as aforesaid."
On a rule made on the plaintiff in error to show cause why the amount of the debt due to the commonwealth should not be taken out of court, the attorney for the United States came into court and suggested "that the commonwealth of Pennsylvania, ought not to be permitted to have and receive the money levied and produced by virtue of the execution in the suit, because the said attorney in behalf of the United States saith, that as well by virtue of the said execution, as of divers acts of congress, and particularly of an act of congress entitled an act to provide more effectually for the settlement of accounts between the United States and receivers of public monies, approved the 3d of March 1797, the said United States are entitled to have and receive the money aforesaid, and not the said commonwealth of Pennsylvania."
Judgment was rendered in favour of the state of Pennsylvania, which judgment was brought before this court by writ of error.
A motion was made to dismiss this writ of error, because the record did not show jurisdiction in this court under the twenty-fifth section of the judicial act. It was dismissed, because the record did not show that an act of congress was applicable to the case. The court added "the act of congress which is supposed to have been disregarded, and which probably was disregarded by the state court, is that which gives the United States priority in cases of insolvency. Had the fact of insolvency appeared upon the record, that would have enabled this court to revise the judgment of the court of Pennsylvania. But that fact does not appear."
In this case the suggestion filed by the attorney for the United States alleged in terms, the priority claimed by the government under an act of congress which was specially referred to. But the case agreed had omitted to state a fact on which the application of that act depended. It had omitted to state that Nicholls was insolvent, and the priority of the United States attached in cases of insolvency only.
In this case the act of congress under which the United States claimed, was stated in the record, and the claim under it was expressly made. But the fact which was required to *259 support the suggestion did not appear in the record. The court refused to take jurisdiction.
In the case at bar, the fact that the title of the plaintiff in error was derived from the laws of Virginia; a fact without which the case cannot be brought within the compact, does not appear in the record: for we cannot consider a mere assignment of errors in an appellate court as a part of the record, unless it be made so by a legislative act. The question whether the acts of Kentucky in favour of occupying claimants were or were not in contravention of the compact with Virginia, does not appear to have arisen; and consequently the case is not brought within the 25th section of the judicial act.
In the argument we have been admonished of the jealousy with which the states of the union view the revising power intrusted by the constitution and laws of the United States to this tribunal. To observations of this character, the answer uniformly given has been, that the course of the judicial department is marked out by law. We must tread the direct and narrow path prescribed for us. As this court has never grasped at ungranted jurisdiction, so will it never, we trust, shrink from the exercise of that which is conferred upon it.
The writ of error is dismissed, the court having no jurisdiction.
Mr Justice BALDWIN dissenting. 
I am compelled to dissent from the opinion of the court in this case for the following reasons:
The certificate of the clerk of the court of appeals, attached to this record, is in these words: "I, Jacob Swigert, clerk of the court of appeals for the state aforesaid, do hereby certify, that the foregoing seventy-two pages contain a transcript of the record and proceedings in the case therein mentioned:" and I feel bound on the preliminary question of jurisdiction, to consider all that is so contained to be a part of the record in this suit; so far, at least, as to give power to this court to examine whether the judgment of the court of appeals is erroneous or not.
On a motion to dismiss this cause for the want of jurisdiction, the only question which arises is, whether it comes prima facie within the twenty-fifth section of the judiciary act? This must be decided on an inspection of the whole *260 record; and if it does appear that it presents any of the cases therein provided for, the motion must be refused. When the record comes to be judicially examined, this court may be of opinion, that though the question did arise which brings their powers into action, yet it did not come up in such a shape, or is not so stated in the record of the court of appeals, that this court can affirm or reverse it for the specific cause assigned for error. If the question appears in any part of the record, it is enough, in my opinion, for jurisdiction. The manner in which it appears seems to me only to be examinable after jurisdiction is entertained.
It appears on the record, that the plaintiff read in evidence on the trial of the cause, a patent from Kentucky for six hundred acres of land in pursuance of three military warrants, Nos. 1115, 1125, and 1123; entered on the 21st of July 1784, and surveyed the 23d of May 1785. The patent is set forth verbatim. As the state of Kentucky had no existence in 1784 or 1785, when these warrants were entered and surveyed, we cannot be judicially ignorant that these acts, as well as the issuing of the warrants, and the title founded on them, were under the laws of Virginia.
As the compact between the two states is a part of the constitution of Kentucky, we cannot be ignorant of its existence, and that it relates to lands held in Kentucky under the laws of Virginia. After the plaintiff in ejectment had recovered judgment, it appears that the court appointed commissioners to assess the value of the improvements made by the defendant on the land recovered from him by the plaintiff. The commissioners filed their report, awarding one thousand three hundred and fifty dollars; and the court rendered judgment for this sum. The parties were then reversed. Fisher, the defendant, moved the court to quash the proceedings; on their refusal, he sued out a writ of error from the court of appeals, summoning the plaintiff Cockerell, to "show cause, if any he can, why a judgment obtained by him against Fisher, in the Union circuit court, at the March term 1824, for one thousand three hundred and fifty dollars, the value of the improvements as assessed by the commissioners appointed under the occupying claimant law, besides costs, should not be reversed for the errors therein contained.
*261 On the record being removed into the court of appeals, Fisher, among other reasons for reversing the judgment, assigned this. "The plaintiff deriving his title from Virginia, the act or acts of the state of Kentucky, on which the court has founded its opinion, is repugnant as to the compact with Virginia; therefore void as to the case before the court, being against the constitution of the United States."
The court gave a deliberate opinion on this exception, and adjudged the occupying claimant law to be constitutional, and affirmed the judgment of the circuit court.
All this appears in the seventy-two pages of the record, certified to us from the court of appeals. I do not feel authorized to declare, that what is so certified by the highest court is no part of the record, and judicially unknown to this court; nor when the record comes up, certified as one entire act, can I on a question of jurisdiction, summarily decide that one part is not as much within judicial cognizance as another.
I cannot be ignorant that John Fisher, a plaintiff in ejectment, claimed under a patent to himself, founded on a warrant entry and survey made in Virginia, and under her laws has recovered a judgment for his land; and that the defendant in the same suit has obtained a judgment against him for one thousand three hundred and fifty dollars, under the laws of Kentucky, which has been affirmed by the highest court in that state. In this I cannot fail to see with judicial eyes, that the validity of a statute of a state has been drawn in question, on the ground of being repugnant to the constitution of the United States. It seems to me to present the very question arising under the twenty-fifth section, clearly and definitely set forth, sufficiently explicit at least for jurisdiction, and containing, in my opinion, all the certainty requisite to enable this court to decide whether they will affirm or reverse the judgment of the court of appeals.
The court of appeals did not think that the record of the circuit court did not bring the great question directly and distinctly for their consideration. It seems to me that the fact of the plaintiff in ejectment being saddled with a judgment of one thousand three hundred and fifty dollars, at the suit of a defendant, for improvements, necessarily involves every question necessary to give this court jurisdiction. A *262 citizen of Kentucky has a right to question the validity of the occupying claimant law, on its alleged repugnancy to the constitution of the United States. Independent of the compact, this court would be bound to hear him on that question, on a writ of error from the court of appeals, on a title wholly emanating from Kentucky. It may be questioned whether he could set up the compact, but he could at least claim the protection of the constitution in this court. This is all that is necessary for jurisdiction.
We are not informed that it is necessary in the circuit courts of Kentucky for a party moving to quash a proceeding like the one contained in this record, to specify the grounds. This motion does not appear to have been overruled by that court for such a reason, but solely on the validity of the law; the judgment of the court of appeals was given expressly on the ground that it was not repugnant to the constitution of the United States.
When the state courts decide the merits of a judgment in favour of the defendant in ejectment, for his improvements; I am not prepared to say that their records are not cognizable here, and that the constitutionality of the law under which they are rendered does not arise on the judgment itself: and I do not know why we should be more astute to the mode in which a question is presented on a record, than the supreme court of a state. It is not a settled rule of law that reasons for the motion should be assigned of record; that is a matter of practice to be regulated by rule. No reasons are assigned of record in this court on motions to quash, or errors assigned on a judgment. They are stated to the court, and in my opinion whenever a motion is made in any court to quash any proceeding, the party moving may urge any reason showing it to be void without specifying them on record, unless it is required by some rule. If the court of appeals had refused to consider the question on the record of the circuit court, because the reasons and grounds of the motion were not of record, we might, if the rule of comity applies to decisions of state courts on questions affecting the jurisdiction of this court under the twenty-fifth section, have made their decision the rule for ours. But, in yielding to this objection, we consider the record of the circuit court in an aspect entirely different from *263 that in which it was viewed and solemnly acted on by the court of appeals. The occupying claimants' laws are public acts, of which all courts in Kentucky are bound to take judicial notice. The proceeding of Cockerell against Fisher was conducted under the immediate eye and order of the court: in its very nature, it imported to be taken under those laws. There were no other laws which would authorize such a judgment; and the validity of the judgment involved the validity of the law.
But I apprehend that it is not necessary to give jurisdiction to this court, that it should appear in the record of an inferior state court that a question arises on the validity of a state law; we have only to look to the record of the court to which we may issue a writ of error, and whose judgment we must reverse or affirm: if it appears there, that the validity of a state law has been drawn in question for the reasons set forth in the twenty-fifth section, and that the decision of the highest court is in favour of its validity, the party against whom their judgment is given has a right to be heard in this court.
In this case, the writ of error from the court of appeals to the circuit court most distinctly alleges the judgment to have been under the occupying claimant law: the error assigned denies its validity as repugnant to compact and constitution; and the opinion and judgment of the court affirmed the validity. I cannot, therefore, consider this record as coram non judice. The question involved in it is as distinct to my mind and as unavoidable as special pleading can make: and the plaintiff in error has, in my judgment, an undoubted right to the opinion of this court, on the constitutional validity of the judgment rendered against him by the court of appeals of Kentucky.
This cause came on to be heard on the transcript of the record, from the court of appeals for the state of Kentucky, being the highest court of law in said state, and was argued by counsel; on consideration whereof, it is considered, ordered and adjudged by this court, that the writ of error in this cause be, and the same is hereby dismissed for want of jurisdiction.