## Samuel Whitwell *et al. versus* Samuel A. Wells *et al.*

Goods found derelict at sea were brought into the port where the owners lived, and deposited in the custom-house, subject to the payment of duties ; and the master of the ship in which they were brought into port, entered them in his manifest as consigned to the plaintiffs. The defendants, as agents of the owners, entered the goods and paid the duties upon them, and obtained a permit for their delivery, but they were detained in the custom-house until a charge for the storage should be paid ; and in the mean time the plaintiffs brought an action of replevin for them against the defendants. The goods were never removed from the custom-house by the plaintiffs or the defendants, but remained there until sold on admiralty process at the suit of the salvors. To the action of replevin the defendants pleaded *non cepit* and that the property was not in the plaintiffs. It was *held*, that the master had no authority to consign the goods to the plaintiffs, and that in fact the evidence did not prove such a consignment, nor any special property in the plaintiffs , that the defendants' pleas were supported by the evidence ; and that the defendants were entitled to a judgment for their costs, but not for a return of the goods.

Replevin for certain goods. The defendants pleaded, 1. *non cepit ;* upon which issue was joined : 2. That the property did not belong to the plaintiffs ; upon which issue was joined : 3. That the property was in the defendants ; to which the plaintiffs replied property in themselves ; upon which issue was joined : 4. That the property was in certain insurance companies and third persons ; to which the plaintiffs replied property in themselves ; upon which issue was joined : 5. That the property was in certain insurance companies, &c. as above stated ; and that the defendants were their agents to enter the goods at the custom-house, make sale of them, &c. ; and to this plea the plaintiffs replied, that the goods were found by one Akerman, derelict at sea, on board the brig Hudson, and were taken by him on board the brig Envoy and brought into Boston, and were duly consigned by him to the plaintiffs, who from thence had the lawful right to possession as agents of Akerman, the master, and the owners &c. of the Envoy, and that at the time of taking, the salvage was due. The defendants rejoined, traversing the consignment and custody of the goods, as averred in the replication ; upon which issue was joined.

To maintain the first issue, the plaintiffs introduced a copy

of the entry of the goods by the defendants, a copy of the original permit, the deposition of Akerman, and an agreement bearing date the 29th of March, 1832, signed by all the parties concerned in the goods. They then called one Barry as a witness ; who testified, that he was employed as an auctioneer by the defendants, to go to the custom-house stores, where the goods were, and take the goods to his auction room and sell them ; that he went to the custom-house stores, as he believed, with the permit ; and was there informed that the sum of about $ 50 was due for storage, on payment of which he understood he could have the goods ; whereupon he returned to the defendant Wells, and being then authorized to pay the storage, he went again immediately to the custom-house stores, and when he got there he was informed that the goods had been attached ; that he never took the goods or removed them. The plaintiffs then introduced evidence that they had demanded the goods of the defendants.

The defendants, to maintain the issues on their part, introduced one Allen, who testified that he was the United States storekeeper, holding in charge such goods as were sent to the custom-house stores ; that the goods in question were, on the 2d of March, 1832, landed under and by the direction of the United States officers, from the Envoy, and deposited in his charge in the custom-house stores, and there remained without ever having been removed by any person, until they were delivered into the hands of the United States marshal, to be sold, on the 30th of May, 1832 ; that a certain sum accrued and became due, in the mean time, to the United States for storage of the goods ; that the permit before mentioned was addressed to the witness, and was then on his files, and never had been executed by a delivery of the goods conformably thereto ; that the witness could not state of whom he received the permit ; and that he was not asked to take charge of the goods for any person, and did not undertake to act for any body, considering himself in the employ of the United States solely.

The defendants then called one Prince, a clerk in the custom-house, who produced the original manifest of the Envoy's cargo, upon which the captain had entered the goods in

question, and under the column for consignees had written, "taken from brig Hudson, consigned to Whitwell, Bond & Co.," the plaintiffs.

The defendants then introduced evidence, that the salvors, underwriters, and others interested in the goods, appointed the defendants agents with full powers to receive the goods.

Upon these facts *Wilde* J., who presided at the trial, being of opinion that the action could not be maintained, the plaintiffs consented to a nonsuit, subject to the opinion of the whole Court.

*C. P. Curtis* and *B. R. Curtis*, for the plaintiffs.

*Fletcher* and *Cooke*, for the defendants, to the point that an actual taking or detention of the goods was necessary to support replevin, cited *Meany* v. *Head*, 1 Mason, 323; *Pangburn* v. *Patridge*, 7 Johns. R. 143; *Byrd* v. *O'Hanlin*, 3 Constitut. Rep. (S. Car.) 401; *Cummings* v. *M'Gill*, 2 Taylor, 98; *Shannon* v. *Shannon*, 1 Sch. & Lefr. 324; and to the point that the plaintiffs had no property in, nor possession of the goods, *Ludden* v. *Leavitt*, 9 Mass. R. 104; *Warren* v. *Leland*, 9 Mass. R. 265; *Perley* v. *Foster*, 9 Mass. R. 112; *Wheeler* v. *Train*, 3 Pick. 255; *Harris* v. *Dennie*, 3 Peters, 292, 304, 305.

MORTON J. delivered the judgment of the Court. The first issue presents the question, whether the defendants took the goods replevied. The second, third, and fourth present the question of property in the plaintiffs. And the fifth presents the question, whether the goods were so consigned to the plaintiffs as to give them such a property in and right to possession of them, as will support replevin.

Although there is an apparent discrepancy between the material averments of these different pleas, yet it is not greater than occurs in other cases; and it is well settled that they may be pleaded together. *Stibbard* v. *Glover*, Barnes's Notes, 364; *Shuter* v. *Page*, 11 Johns. R. 196. If pleas are consistent in themselves, it is not necessary that they should be consistent with each other. It is said that even *non cepit* and an *avowry* may be pleaded together. *Thomas* v. *Eamonson*, Barnes's Notes, 365.

Upon the trial, the presiding judge was of opinion, that the

*Whitwell*
*v.*
*Wells.*

*March 13th,*
*1834.*

*March 24th*
*1834.*

evidence introduced was not sufficient to maintain any of the issues on the part of the plaintiffs, and thereupon they became nonsuit. The facts being reported, we are to decide upon the correctness of this opinion.

To support the issue of *non cepit* the plaintiff must prove either an unlawful taking or an unlawful detention. It is not necessary to show property in the plaintiff; for this plea admits it; and only puts in issue the unlawful taking or detention. Bull. N. P. 54; 1 Chit. Pl. 188; *M'Farland* v. *Barker*, 1 Mass. R. 153. It is manifest that the plaintiff cannot prevail on this issue without showing a possession by the defendant. An injury to goods, or a destruction of them, or an unlawful interference to prevent the owner from receiving them, may be a wrong for which trespass or case will lie, but will never authorize replevin. Do the facts show such a taking or such a promise, with a refusal to restore, as will support the action upon this issue?

The goods in question, having been taken from a wreck at sea, were brought into port by the Envoy, and, the duties being due to the United States, were deposited in the custom-house stores. Afterwards the defendants, supposing that they had an interest in the goods, entered them and paid the duties upon them. They were not, however, removed from the public stores. The defendants employed an auctioneer to remove the goods to his auction room and there to sell them. A permit to remove them was obtained and presented to the storekeeper. It matters not whether this was sent directly to the public stores, or was presented by the auctioneer, or was handed to a truckman and by him presented to the storekeeper. It contained sufficient authority for the removal of the goods and it would have made no difference, whether they had been delivered to the truckman, the auctioneer or the defendants themselves. The two former being mere agents of the latter, it would in either event have given the legal possession to the defendants. It appears, however, that the United States had a lien upon the goods for storage, and that the storekeeper refused to deliver them until this claim was satisfied. While the auctioneer was procuring the necessary authority and making suitable preparations to discharge this

claim the goods were replevied. If the plaintiffs had delayed their suit a very short time, it is highly probable that the auctioneer would have obtained for the defendants such possession as would have removed all doubt upon this point. But we think the plaintiffs were premature in the service of their writ. The defendants intended to take possession, but they had not executed their intention. They were preparing to take the goods, but had not actually done it. The evidence, in our opinion, shows neither an actual nor constructive possession.

The auctioneer certainly had not taken possession. He was trying to do so, but had not succeeded. So far from exercising any control over the goods, he had not been able to get them.

The defendants, claiming to be the owners, had paid the duties on the goods ; but this was no injury to the plaintiffs and no hindrance to their taking possession. It was no interference with any claims which the plaintiffs might have to them. Of this, assuredly, they have no right to complain. The defendants had not so far discharged the claims of the United States as to be entitled to the possession ; much less had they actually obtained the legal possession. The goods were in the possession of the United States, and in the custody of their agent. Although the procuring the permit was an indispensable step to enable the defendants to get possession, and although it might prevent all others from doing so, yet it was not the only step which was necessary, and clearly did not give them the possession. *Harris* v. *Dennie*, 3 Peters, 304, 305.

When the demand was made upon the defendants, for the goods, they had no power to comply with it. Their refusal, therefore, could be no conversion. They could not unlawfully detain what they did not possess. We are all clearly of opinion, that the facts do not show any unlawful taking or detention. The nonsuit, therefore, must stand.

The decision of the general issue in favor of the defendants is conclusive and entitles them to judgment. But the examination of the questions arising upon the other issues, may be important, in reference to the nature of the judgment to be entered and the final decision of the case. We shall, therefore, proceed to investigate them.

The second, third, and fourth pleas put in issue the property of the plaintiffs. The fifth does not materially differ from them, and raises more specifically the question of a special property in the plaintiffs. To maintain the action, on these issues, they must show in themselves either a general or special property. They do not pretend to be the general owners. They only claim a special property as agents or consignees. A special property is sufficient. . Co. Lit. 145 *b* ; Bac. Abr. *Replevin, F.* ; *Templeman* v. *Case*, 10 Mod. 25. But it must be accompanied with an immediate right of possession. Sand. Pl. & Ev. 760 ; *Wheeler* v. *Train*, 3 Pick. 255. A mere *possessory* right is too weak. *Bare possession* will support trespass, but not replevin. A mere *bailee* cannot maintain replevin. 5 Dane's Abr. 516, § 4, 6, 8, and cases cited.

Had the plaintiffs such a special property in the goods re plevied, and such a right to the possession of them, as will enable them to maintain this action ?

The defendants were the agents of the general owners. The goods had been found derelict, upon the ocean, and brought into port. This did not change the ownership. *The Aquila*, 1 Rob. Adm. R. 41, 43. Most of the original owners, having previously insured the goods, had abandoned them to the underwriters, and thereby transferred the general property to them. These underwriters, with such of the original owners as had not insured their interest, were at the time of the arrival of the goods in port the general owners. These owners, all of whom resided at the port of delivery, had appointed the defendants their agents. Under these circumstances, who had the control and the right to the possession and disposition of the goods ?

The salvors had a claim paramount to all others. They had the control, so far as was necessary, to enforce this claim. But their interest in the goods did not amount to ownership. By finding vessels or other chattels upon the ocean, the finders do not become the owners. The property remains as before, subject only to the right of salvage. This right is merely a *lien*, a right to retain the goods till the salvage be paid. This must stand essentially on the ground of other

liens ; and would give no right to pledge or sell the property. *Martini* v. *Coles*, 1 Maule & Selw. 140 ; *Shipley* v. *Kymer*, ibid. 484 ; *Corlett* v. *Gordon et al.* 3 Campb. 472. The salvors, therefore, had no authority to make a sale or consignment to the plaintiffs. And if they had done either, the act would have been unauthorized and inoperative.

Neither had the captain derived any authority from the owners. They had not appointed him their agent, and his situation would not authorize him to represent them, inasmuch as they were present to act for themselves. The captain, therefore, could not bind the owners by any disposition which he might undertake to make of the goods.

But we do not think that any consignment, valid or invalid, was made. Here was no bill of lading ; and the mere insertion of the plaintiff's name in the manifest would be very slight evidence of an intent to constitute them consignees, or invest them with any legal interest in the goods. But whatever the intent of the master was, it is very clear that he had no authority to convey any property in these goods.

If the salvors had the power to make an equitable assignment of their rights, no legal interest would pass. If they parted with the possession, they would lose their lien. If they retained the possession, then no other person could acquire a lien. If they assigned their right and passed the possession, then the lien might be preserved, because the assignee would hold the possession as the servant of the assignors, and it would be a continuance of their possession. 2 Kent's Comm. (1st ed.) 501 ; *M'Combie* v. *Davies*, 7 East, 5 ; *Urquhart* v. *M'Iver*, 4 Johns. R. 103. This would not enable the assignee to maintain replevin. But by instituting legal process in the District Court for the recovery of the salvage, they virtually abandoned their lien. The goods thenceforward were in the custody of the law and not in their possession. They preferred the arm of the civil power to their personal claim upon the goods, to be enforced by themselves.

We are, on the whole, well satisfied that the plaintiffs have failed to support their action upon all the issues. The defendants must, therefore, have judgment. But what this judgment shall be, is a question of some difficulty. The defendants be-

ing the prevailing parties, of course are entitled to their costs; but they claim a judgment for a return of the goods and for damages for the detention.

When the plaintiff becomes nonsuit, before the defendant has pleaded, the latter shall have a return without an avowry or conusance. *Salkold* v. *Skelton*, Cro. Jac. 519. But, although the judgment is, in form, by nonsuit, yet it is entered after a full trial, and it would be a sacrifice of substantial justice to technical form, to found our opinion upon this circumstance. We think we ought to render such a judgment as would be required by a verdict upon all the issues. The result of such a verdict would be, that the defendants never took the goods, and that the plaintiffs had no property in them. What decree shall the Court pass in relation to them ? Leave them in the plaintiffs' hands, or deliver them to the defendants ?

On *non cepit*, it is well settled that there can be no return. *Anonymous*, 2 Mod. 199. If the defendants did not take or detain the goods, there can be no reason for giving them the possession. If they claim the goods as their property, and wish to set up and enforce their claim, they should avow and thus make themselves *actors* as well as defendants.

But it is equally well settled, that where the defendants plead property in a stranger or in themselves, and traverse the plaintiffs' property, if the issue be found in their favor, they are entitled to a return without an avowry or conusance. 5 Dane's Abr. 530, 531, and cases there cited. And the general rule is, that where it appears from the record, that the defendants were in possession at the time of the replevin, they shall, if they prevail, have a return. *Butcher* v. *Porter*, 1 Shower, 401.

But, in this case, both pleas are pleaded and both issues are found for the defendants. The plaintiffs had no property in the goods, and the defendants no possession of them. What judgment shall be rendered ? Where pleas somewhat inconsistent are allowed and issues found upon them, we should examine the whole record, see what facts appear upon it, and render such judgment as they equire. The facts here found, seem to be perfectly consistent with each other and to indicate the proper course. The object of a judgment in favor of the

defendants, should be to place them in the same or as good a situation as they were in when the suit was commenced. More than this, no suitor ought to desire. The defendants never having had the possession of the goods, ought not to acquire it by a suit against them. A decree to *return* the goods to the defendants would be absurd, as they never had the possession of them. The fact that the property of the goods was not in the plaintiffs, is no reason why they should be adjudged to the defendants.

If this reasoning may be deemed narrow and technical, we will take a more liberal and comprehensive view of the facts. We have no fear that we shall find ourselves so shackled by the forms of pleading, as to be unable to administer full legal justice between the parties.

It sometimes happens, that, by a change of property, after the replevin and after the pleadings are closed, it becomes useless and improper to render such judgment as seems to be required by the state of the record. The facts upon which the pleadings are founded, cease to exist before the final judgment. In such case, the court will receive evidence of the intervening facts, and render judgment according to the justice of the case at the time. As, if the defendant had a special property in the chattels and a right to possession of them, which terminated before final judgment, the court would render judgment for the defendant for costs, but not for a return, because at the time of rendering judgment he had no right to the possession. In *Wheeler* v. *Train*, 4 Pick. 168, the defendant showed a special property in a third person, liable to attachment, and which he had attached. This was a perfect defence to the suit and entitled him to judgment. But as the special property had ceased before judgment, the defendant recovered only his costs. If the chattels had been returned to the officer, he could not have holden them on his attachment. The law would not do so vain an act as to cause a return to the officer, who would have been bound immediately to restore them to the plaintiffs.

We have no doubt of our power to render such judgment as the existing facts require. They appear to be, that the plaintiffs have no property in the goods ; that the defendants

represent the general owners ; that they had the right of prop-
erty, but not the possession ; that the salvors had a lien for
their salvage ; that they libelled the goods in the admiralty
jurisdiction, and caused them to be sold ; that the salvage was
paid out of the proceeds of the sale, and that the balance re-
mains in the custody of that court for the use of the owners.
This the defendants are entitled to receive, and it is all which
in justice they can claim. On the other hand, the plaintiffs
have received nothing and are entitled to nothing ; the goods
have been taken out of their hands without any fault of theirs ;
the law has laid its hands upon them and disposed of them to
satisfy a paramount claim. Justice forbids a judgment for a
return. It would be impossible for the plaintiffs to execute
it. It would only lay a foundation for an unjust and vexatious
suit upon the replevin bond.

On the whole, the Court are of opinion, that whether we
regard the state of the pleadings or the state of the facts at
this time, the defendants are not entitled to a judgment for a
return.

Nor is the defendants' claim for damages any better sustain
ed. They are necessarily connected, and I know of no pre-
cedent of a judgment for damages, unless there was also a judg-
ment for a return. If, according to the doctrine of *Wheeler* v.
*Train*, there may be cases which require this, we think the
present is not one. What are damages given for ? The inter-
ruption of the defendants' possession ; the loss of the use of
the goods from the time of their replevin till their restoration,
and for their deterioration. The defendants had no possession
to interrupt. The goods followed the destination of the law.
There is no evidence that they would have been disposed of
differently, if the suit had never been commenced.

But if it were otherwise, and the replevin defeated the de-
fendants' intention to obtain possession of their goods and pre-
vented them from making as profitable a use or as advantageous
a disposition of them, as they expected, it is an incidental in-
jury for which they must seek a different remedy, if they are
entitled to any, but for which they cannot recover damages in
this form of action.

*Judgment for defendants for costs.*