## GENERAL EXPORTING CO. v. STAR TRANSFER LINE et al.

No. 9434.

Circuit Court of Appeals, Sixth Circuit.

June 4, 1943.

Maxfield Weisbrod, of Chicago, Ill. (Benjamin I. Salinger, of Chicago, Ill., on the brief), for appellant.

Warner, Norcross & Judd and Joseph Shulsky, all of Grand Rapids, Mich., for appellees.

Before SIMONS, MARTIN, and Mc-ALLISTER, Circuit Judges.

MARTIN, Circuit Judge.

Controversy concerning the title to 799 cases of Scotch whisky has already brought four cases to the courts. Three of these cases yet pend, every case of the Scotch is still in a bonded warehouse, and the thirst of the hopeful consumer remains unquenched. Equity may aid the vigilant, but it has not yet relieved the thirsty.

Southard and Company, Ltd., of London, England, sold to appellant, General Exporting Company, an Illinois corporation, 799 cases of blended Scotch whisky on invoices evidencing terms of sale and trans-oceanic shipment. The English consignor, having no importer's basic permit, could not lawfully have the whisky, upon arrival in the United States, warehoused in its own name for its protection against default by the consignee in payment of the purchase price. On the other hand, the appellant consignee was entitled, by applicable law and customs regulations, to enter the whisky in its own name in a warehouse in the United States. The appellant warehoused the merchandise in Detroit, Michigan, with the appellee Star Transfer Line, and received negotiable warehouse receipts therefor. The appellant, however, failed to pay for the whisky purchased.

Southard and Company, claiming title as real owner of the whisky and the warehouse receipts covering the beverage, instituted suit on May 20, 1940, in the United States District Court at Chicago against the appellant General Exporting Co., and Benjamin I. Salinger, appellant's attorney in the case at bar. Procedural steps have been taken therein, but not to final judgment. Though dormant, the suit still lives.

John J. McKeown, claiming ownership of the whisky by virtue of his purchase of the negotiable warehouse receipts, brought suit in chancery on December 21, 1940, in the Circuit Court of Wayne County, Michigan, against both the appellant and the appellee Star Transfer Line, but did not join Southard and Company, Ltd., as a party defendant.

Soon after the commencement of the McKeown suit in Wayne County, the appellee Star Transfer Line filed, on January 22, 1941, an interpleader bill in chancery in the Superior Court of Grand Rapids, Michigan, and obtained an order enjoining any action or proceeding at law or in equity against it arising out of the storage of the controversial whisky in its warehouse. The further prosecution of the Wayne County suit was expressly enjoined. In the Grand Rapids interpleader suit, the party defendants named were the General Exporting Co., John J. McKeown, Southard and Company, Ltd., and the Receiver appointed by the United States District Court at Chicago.

After trial upon the merits, the Superior Court of Grand Rapids decreed Southard and Company to be sole owner of the 799 cases of whisky and the warehouse receipts therefor, subject to the liens of the appellee Star Transfer Line for storage and allowed expenses. It was decreed that nei-

ther John J. McKeown nor the appellant had any interest whatsoever in the whisky or in the warehouse receipts, and these, having been impounded, were ordered delivered by the Clerk of the Court to the appellee for cancellation. The decree directed that in due course, consistent with Federal statutes, the appellee warehouseman should be empowered to sell the whisky, subject to custom duties and internal revenue taxes owing on it, the purchaser to be responsible for the payment thereof; or, in the alternative, such custom duties and internal revenue taxes were to be paid out of the proceeds of the sale.

All four parties defendant were enjoined from commencing or prosecuting against the appellee any actions arising out of the storage of the whisky, or the issuance of the warehouse receipts, unless founded upon obligations of the appellee warehouseman pursuant to the provisions of the decree. The appellant and McKeown were enjoined from instituting any action "against the customs authorities of the United States, arising out of the storage of said whiskey in bond for payment of customs duties and internal revenue taxes;" from claiming ownership to the whisky contrary to the adjudication of the court; and from interference in any way with the sale of the whisky by the appellee, in accordance with the provisions of the decree.

This decree of the Superior Court of Grand Rapids was not entered until July 7, 1942, which was after the institution of the instant action, but the judge of that court had announced his opinion, upon which the subsequent decree was based, prior to the institution on May 19, 1942, of the present suit in the United States District Court for the Eastern District of Michigan. Moreover, upon commencement of the interpleader suit in the Superior Court of Grand Rapids, a temporary injunction was granted restraining the defendants therein from filing or prosecuting against appellee any court proceeding arising out of the storage of the whisky in its Detroit warehouse.

The civil action, dismissal of which by the District Court is the basis of the present appeal, was brought by the appellant, General Exporting Co., "as consignee and for the benefit of John J. McKeown" of Illinois, against the appellees, Star Transfer Line, Martin B. Bradley, U. S. Collector of Customs at the Port of Detroit, Michigan, and the Honorable Thaddeus B.

Taylor, Judge of the Superior Court of Grand Rapids, Michigan. In the complaint, an adjudication was prayed that no other person than McKeown possesses any right, title or interest in and to the whisky in controversy, except to the amount that may be due for customs and storage charges. The "said Collector of Internal Revenue" was sought to be enjoined from forfeiting or disposing of the whisky, in whole or in part, until the rights of the parties should be determined. It was prayed further that the liquor, upon payment of the duties thereon, should be ordered released to appellant; and that the storage charges of the appellee warehouseman be determined and, when paid by appellant, delivery of the entire 799 cases of whisky should be made to appellant by the appellee warehouseman. The complaint also prayed that the Judge of the Superior Court of Grand Rapids, Michigan, be enjoined "from taking any further proceedings" in the chancery cause pending before him, and from citing appellant or its attorneys or agents for contempt in instituting the instant action in violation of the injunction issued by the state court judge. It was prayed further that the injunction issued in the Superior Court of Grand Rapids, and all the proceedings therein "be declared null, void and of no effect;" and that "all parties be restrained both temporarily and permanently from proceeding in any manner in said Chancery suit." A restraining order was asked pending hearing on an order to show cause why the injunction, as prayed, should not be granted.

The appellees, Star Transfer Line and the Honorable Thaddeus B. Taylor, Judge of the Superior Court of Grand Rapids, Michigan, filed a joint motion to dismiss the complaint, or to abate the cause, or to stay proceedings therein, for the reasons that (1) the complaint fails to allege facts sufficient to constitute a good cause of action; (2) the district court has no jurisdiction and should not attempt to enjoin the judge of a state court of coordinate jurisdiction; (3) another action is pending between the appellant and the appellee Star Transfer Line, wherein all issues raised herein can be determined, and all relief to which appellant may be entitled—if any —can be obtained; and that the joinder of the Collector of Customs and the Judge of the Superior Court of Grand Rapids as parties was unnecessary and improper; (4) the complaint improperly attempts to cause the United States District Court "to act

as an appellate court with respect to the Superior Court of Grand Rapids, Michigan;" and (5) the commencement of this action was in violation of the injunction of the State Court.

The Collector of Customs for the Port of Detroit, Michigan, filed an answer to the complaint in which he stated that unless the aggregate duties and internal revenue taxes on the whisky be paid before specified dates, he would be authorized by law to offer the whisky at public sale. In his answer, the Government official further averred that the whisky is being held subject to the order of the United States District Court, and that "any disposition or order of a court other than that of the United States would be disregarded by your defendant in the performance of his peculiar duties in the premises." In conclusion, it was asserted in the answer that the Collector would abide the dictates of the District Court; that he has no other interest in the premises than collection of the customs duties and internal revenue taxes, which is an interest not in personam, but in rem; and that, notwithstanding whether disposition is made by the District Court of the proprietary interest in the whisky, "the same would be subject to the aforesaid customs duties and internal revenue taxes."

Upon the pleadings, "and upon evidence received in open court," and after hearing argument and considering briefs, the District Judge filed an opinion in which he announced that the motion to dismiss would be granted, and later entered findings of fact, conclusions of law, and a decree, in conformity with the opinion which he had previously promulgated.

1. Appellant contends that a Federal Court, alone, possesses jurisdiction to determine title to and ownership of whisky in bond; and that the Superior Court of Grand Rapids, Michigan, was not vested with jurisdiction and could exercise none to adjudge the title and ownership of the 799 cases of whisky involved in this controversy.

True it is that, by Act of Congress, it has been provided that "all property taken or detained by any officer or other person, under authority of any revenue law of the United States, shall be irrepleviable, and shall be deemed to be in the custody of the law, and subject only to the orders and decrees of the courts of the United States having jurisdiction thereof." R.S. § 934, 28 U.S.C.A. § 747.

It is also true, as brought forward by appellant, that as early as Harris v. Dennie, 3 Pet. 292, 293, 28 U.S. 292, 7 L.Ed. 683, the Supreme Court, in an opinion by Mr. Justice Story, held that, inasmuch as the United States has a lien on imported goods for the payment of customs duties and is entitled to virtual custody of the merchandise from the time of its arrival in port until the duties are paid or secured, any attachment by a state officer is an interference with such lien and right of custody, and, "being repugnant to the laws of the United States, is void." It should be easily observed, however, that this ancient authority furnishes no true guidance toward disentanglement of the involved issues in the case at bar.

The holding in Covell v. Heyman, 111 U.S. 176, 177, 4 S.Ct. 355, 28 L.Ed. 390, cited by appellant, merely protected the possession by a United States Marshal of property, upon which he had lawfully levied an execution under a federal court judgment, against an action in a state court to replevin the property seized by the Marshal. The opinion of the court (page 179 of 111 U.S., page 357 of 4 S.Ct., 28 L.Ed. 390) recognizes that all other remedies to which a party may be entitled "not involving the withdrawal of the property or its proceeds from the custody of the officer and the jurisdiction of the court" may be pursued "in any tribunal, state or federal, having jurisdiction over the parties and the subject-matter."

From United States v. Klein, 303 U.S. 276, 281, 58 S.Ct. 536, 82 L.Ed. 840, it is clear that while a Federal Court which has taken possession of property in the exercise of judicial power conferred by Federal law, is said to acquire exclusive jurisdiction, other courts having jurisdiction to adjudicate rights in the property are not powerless, despite possession of the property by the Federal Court, to render any judgment not in conflict with the Federal Court's authority to decide questions within its jurisdiction and to make its decisions effective by control of the property.

In Equitable Trust Co. of New York v. Pollitz, 2 Cir., 207 F. 74, 75, the assertion was made that while a Federal Court, having possession of the res, should enjoin state court proceedings affecting such possession, issues not involving possession "may properly be litigated in the court which first acquires jurisdiction." The

Court of Appeals remarked that there was nothing in the record before it to show disposition on the part of the State Court "to go outside its proper province." The same observation is apt in the present context.

Being quite pertinent here, a State Court authority, Peabody v. Maguire, 79 Me. 572, 12 A. 630, will be considered. Lumber had been imported into the United States and was in the *legal custody* of the Collector of Customs pending payment of import duties. A title dispute arose between the buyer and the seller, whereupon a trustee, in *actual possession* of the lumber, interpleaded in a state court proceeding and sought adjudication of the title as between the buyer and the seller. The Supreme Court of Maine, while asserting that no actual attachment of the lumber could be ordered, held that the State Court could properly decide the title controversy. Compare Raftes v. Argyropulo, 123 Misc. 738, 206 N.Y.S. 284.

■ The Superior Court of Grand Rapids carefully refrained from interference with the rights and powers of the United States Collector of Customs and, in its decree, expressly protected collection of the customs duties and internal revenue taxes due the United States so as not in any manner to disturb the position of the Government. Both principle and authority support the jurisdiction of the Michigan trial court, properly invoked, to adjudicate, as between buyer and seller, the title to the whisky and the warehouse receipts.

■ 2. No merit is found in the argument of appellant that under Michigan Statutes, the Superior Court of Grand Rapids is only a municipal court, possessing no equity jurisdiction of the character which it exercised in entertaining the interpleader suit of the Star Transfer Line, wherein title to the whisky and warehouse receipts was determined. In Stowell v. Johnson, 280 Mich. 627, 630, 274 N.W. 354, the Supreme Court of Michigan declared that the statute governing the jurisdiction of the Superior Court of Grand Rapids is 3 Comp.Laws 1929, § 16351, Mich.Stat.Ann. § 27.3623, which provides that the Superior Court has jurisdiction "of all equity suits * * * in which any complainant or defendant shall be resident of said city, or in which the subject matter of such suit is situate in said city"; and that this statute clearly confers jurisdiction upon the Superior Court in equity cases, if any of the parties to the suit reside in Grand Rapids. The United States District Court has found upon evidence that the office and principal place of business of the appellee, Star Transfer Line, is in the City of Grand Rapids. That Michigan corporation was, therefore, privileged under Michigan law to file its interpleader suit in the Superior Court of Grand Rapids.

■ The Michigan Statute, supra, confers upon the Superior Court of Grand Rapids original jurisdiction, concurrent with the Circuit Court of Kent County, of all equity cases in which either party is a resident of Grand Rapids. All Michigan Circuit Courts in chancery have jurisdiction to hear and determine suits begun by bills of interpleader, filed by any individual or corporation domiciled in Michigan having in its custody or possession property to which there are two or more adverse claimants. Such interpleader suit may be brought in the Circuit Court in chancery of the county in which the custodian of the property resides, Michigan Statutes Annotated, 1942 Cumulative Supplement, § 27.545, paragraph 7, Comp.Laws Supp.1940, § 13944, subd. 7. The Circuit Court of Grand Rapids, being vested with concurrent jurisdiction with the Circuit Court of Kent County, had a concurrent right to entertain the interpleader bill filed by the appellee.

■ It may be added that jurisdiction already assumed and exercised under state law by a state court is not subject to collateral attack in a federal district court. See Mutual Reserve Fund Life Association v. Phelps, 190 U.S. 147, 159, 160, 23 S.Ct. 707, 47 L.Ed. 987; Kohn v. Central Distributing Co., 306 U.S. 531, 534, 59 S.Ct. 689, 83 L.Ed. 965.

■ 3. Appellant insists that the District Court should have enjoined the Judge of the Superior Court of Grand Rapids, Michigan, "from taking any further steps" in the interpleader suit in his court, from citing appellant for contempt for violation of the injunction issued by him, and from signing, issuing and executing any further orders or processes in the suit. The position of appellant is not well grounded.

Section 265 of the Judicial Code provides that "the writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy." 28 U.S.C.A. § 379. In construing this statute, in Toucey

v. New York Life Insurance Co., 314 U.S. 118, 141, 62 S.Ct. 139, 148, 86 L.Ed. 100, 137 A.L.R. 967, as forbidding a federal court to enjoin a proceeding in personam in a state court, the Supreme Court said that "we must be scrupulous in our regard for the limits within which Congress has confined the authority of the courts of its own creation." The previous language of the Court, in Taylor v. Carryl, 20 How. 583, 597, 15 L.Ed. 1028, was quoted: "The legislation of Congress, in organizing the judicial powers of the United States, exhibits much circumspection in avoiding occasions for placing the tribunals of the States and of the Union in any collision."

■ Simultaneously with its pronouncement in the Toucey case, the Supreme Court asserted in Southern Railway Co. v. Painter, 314 U.S. 155, 159, 62 S.Ct. 154, 155, 86 L.Ed. 116, that "the restrictions of § 265 upon the use of the injunction to stay a litigation in a state court confine the district courts even though such an injunction is sought in support of an earlier suit in the federal courts." See, also, Maryland Casualty Company v. Pacific Coal & Oil Co., 312 U.S. 270, 274, 61 S.Ct. 510, 85 L.Ed. 826; Oklahoma Packing Co. v. Gas Co., 308 U.S. 530, 309 U.S. 4, 8, 9, 60 S.Ct. 215, 84 L.Ed. 537; Kline v. Burke Construction Company, 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077.

4. The single question left in the case is whether the District Court, even though possessing no jurisdiction to enjoin the proceedings in the State Court, erred in dismissing the complaint. Appellant urges that the complaint should not have been dismissed, for the reason that federal questions were presented under the revenue acts, under the Warehouseman's Act, under the Alcohol Administration Act, and under the Commerce Clause of the Constitution of the United States. Moreover, the insistence is made that another action pending in a State Court does not bar an action in a Federal Court involving the same subject matter.

The predicate for appellant's argument is the rule of McClellan v. Carland, 217 U.S. 268, 282, 30 S.Ct. 501, 54 L.Ed. 762, that the pendency of an action in a state court is no bar to proceedings concerning the same subject matter in a federal court, likewise possessing jurisdiction. This authority was followed in Great North Woods Club v. Raymond, 6 Cir., 54 F.2d 1017, 1018. The doctrine was pronounced that "where

the federal court has jurisdiction of parties and of subject-matter, it is usually true that the plaintiff in that court has an absolute right to have his case in that jurisdiction proceed to trial, and that there is no discretion to stay that action, pending the result of an earlier one in the state court."

■ A wholly different case is presented here. The interpleader suit had proceeded to pronouncement of judgment in the state court before appellant commenced his action in the United States District Court. The Judge of the Superior Court of Grand Rapids had announced his decision, although the decree had not been entered. Vigilance of attorneys, in invoking the jurisdiction of the Federal Court before the decree in the State Court had been actually entered in conformity with the opinion announced by the Judge, should not in equity be permitted to nullify the effect of the decision of the State Court.

■ That it fell within the discretion of the District Judge to dismiss the instant action seems abundantly supported by a series of Supreme Court decisions. Essanay Film Co. v. Kane, 258 U.S. 358, 361, 42 S.Ct. 318, 319, 66 L.Ed. 658, directed attention to the fact that, from the first Judiciary Act, Congress at all times has maintained provisions in statutes "deemed needful for reviewing judicial proceedings in the state courts involving a denial of federal rights, but has confined them to a direct review by this court, and deferred this until final judgment or decree in the state court of last resort." See, also, Commonwealth of Pennsylvania v. Williams, 294 U.S. 176, 55 S.Ct. 124, 79 L.Ed. 651.

■ In Brillhart v. Excess Insurance Co., 316 U.S. 491, 494, 495, 62 S.Ct. 1173, 1176, 86 L.Ed. 1620, a motion to dismiss was made upon the ground that another proceeding was pending in the state court, wherein all matters in controversy between the parties could be fully adjudicated; and that, therefore, a declaratory judgment in the federal court was unwarranted. The Supreme Court held that this motion to dismiss was addressed to the *discretion of the court,* which was under no compulsion to exercise the jurisdiction which it possessed under the Federal Declaratory Judgments Act, 28 U.S.C.A. § 400. The cause was remanded to the District Court for the proper exercise of that court's discretion in passing upon the petitioner's motion to dismiss the suit. The Supreme Court emphasized that, ordinarily, it would be both

uneconomical and vexatious should a federal court proceed in a declaratory judgment suit, when another suit between the same parties was pending in the state court, presenting the same issues not governed by federal law. The Court commented that "gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." Compare Western Supplies Co. v. Freeman, 6 Cir., 109 F.2d 693, 695.

▆▆ The attempt to relitigate in federal courts issues already determined in state court proceedings has been disapproved in numerous opinions of United States Courts below the grade of the Supreme Court. Ritholz v. North Carolina State Board of Examiners in Optometry, D.C.N.C., 18 F.Supp. 409, 413 (three-judge court); Davega-City Radio v. Boland, D.C. N.Y., 23 F.Supp. 969, 970 (three-judge court); Hall v. Ames, 1 Cir., 190 F. 138, 140, 141; Furnald v. Glenn, 2 Cir., 64 F. 49, 54. Judge Parker, in the first case cited, said: "The remedy of plaintiffs, if they are aggrieved by the action of the state court, is appeal to the state Supreme Court, the action of which in proper cases can be reviewed by the Supreme Court of the United States by writ of certiorari. After litigating the issue in the state court, however, they cannot remove the case to the federal district court, nor can they obtain review of an adverse decision by filing a bill in equity in that court." Likewise, in the second case, supra, Judge Swan, in applying the principle that a decision of a state court may not be reviewed by a bill in equity in a United States District Court, declared that the remedy to accomplish review of an issue decided in the state court adversely to the suitor in the federal court is "appeal through the appropriate state courts and, if necessary, review by the Supreme Court of the United States." The Circuit Court of Appeals for the First Circuit, in the third case cited above, considered it certain that no power is vested in a federal trial court in an independent collateral proceeding to review a cause heard and determined by a state court of general jurisdiction to the end that the proceedings in the state court should be overthrown. Considerations of comity were also regarded as forbidding review of the decision of the state court. In the last case listed, the Circuit Court of Appeals for the Second Circuit wrote: "No authority has been cited for the proposition that one court of equity will undertake to annul the interlocutory decree of another court of equity; and there is no support for it upon principle or in good sense. The party complaining of such a decree has a sufficient remedy by applying to the court which made it, and it would be most unseemly, and an intolerable interference with the orderly administration of justice, for another court to assume to interpose." We are in accord with these federal court opinions, and consider that, in dismissing the instant action, the District Court exercised sound discretion.

No reason for reversal appearing, the judgment of the District Court is affirmed.