J. HENRY SCHRODER BANKING
CORPORATION

v.

George P. SCHULTZ, Secretary of the
Treasury of the United States, et al.

BEN R. HENDRIX TRADING CO., INC.

v.

J. HENRY SCHRODER BANKING
CORPORATION et al.

Civ. A. Nos. 73-B-127, 73-B-128.

United States District Court,
S. D. Texas,
Brownsville Division.

Feb. 22, 1974.

Supplemental Memorandum
April 25, 1974.

Atlas, Hall, Schwarz, Mills, Gurwitz &
Bland, Asa V. Bland and Charles C.
Murray, and Judin & Barron, Russell
Barron, McAllen, Tex., for J. Henry
Schroder Banking Corp.

Wheeler & Wheeler, James L. Wheeler, New Orleans, La., and Hardy, Sharpe

& Rodriguez, Benjamin S. Hardy, Brownsville, Tex., for Ben R. Hendrix Trading Co., Inc.

Anthony J. P. Farris, U. S. Atty., William L. Bowers, Jr., Asst. U. S. Atty., and Carroll D. Smyers, U. S. Bureau of Customs, Houston, Tex., for George P. Schultz, Secretary of the Treasury of U. S., Cleburne Maier, Regional Comm. of Customs, Shelby L. White, Acting Regional Comm. of U. S. Bureau of Customs, Anthony J. P. Farris, U. S. Atty., S. D. of Tex., Elliot Richardson, Atty. Gen., of U. S., and the U. S. .Customs Service.

Atlas, Hall, Schwarz, Mills, Gurwitz & Bland, Asa V. Bland, McAllen, Tex., for Claudio Castaneda, Sheriff of Hidalgo County, Texas, Ken Kellar, d/b/a Exports, Inc. and Jud Brady, d/b/a Brady's.

Kelley, Looney, Alexander & Hiester, Ralph L. Alexander, Edinburg, Tex., for Alamo Express, Inc. and SAIA Motor Freight Line, Inc.

James R. Clopton, McAllen, Tex., for Victor M. Guerra, Individually, and d/b/a Guerra Customs Bonded Warehouse.

## MEMORANDUM AND ORDER

GARZA, District Judge.

This action originally started out as two separate suits, Civil Actions 73–B–127 and 73–B–128, filed pursuant to the Declaratory Judgment Act, 28 U.S.C.A. § 2201, which were consolidated by Order of this Court on November 6, 1973. Jurisdiction is predicated on diversity, 28 U.S.C.A. § 1332 and 28 U.S.C.A. § 1331, in that this action arises under the laws of the United States. For purposes of simplification, the parties will be referred to as they were, or would have been, aligned in the first suit, Civil Action 73–B–127.

The subject of this lawsuit is bonded goods, some of which were in transit, most of which is liquor, and all of which are presently located in bonded warehouses in the Texas counties of Webb and Hidalgo. Plaintiff-Cross Defendant J. Henry Schroder Banking Corporation, hereinafter referred to as "Bank", is a business organized under the laws of New York and is here seeking a declaratory judgment that certain attempted Sheriff's sales were not in violation of federal law; the Bank is also seeking a Writ of Mandamus to compel Customs officers to release the above mentioned bonded goods pursuant to a state court order, and an injunction to prevent Ben R. Hendrix Trading Co., Inc. from removing any of the goods in bond from the warehouses.

Defendant-Cross-Plaintiff Ben R. Hendrix Trading Co., Inc., hereinafter referred to as "Hendrix", is a Louisiana corporation, and is here seeking a declaratory judgment that the attempted Sheriff's sales and the underlying state court order are void.

Defendant George P. Schultz, Secretary of the Treasury of the United States; Shelby L. White, Acting Regional Commissioner of the United States Bureau of Customs; Anthony J. P. Farris, United States Attorney for the Southern District of Texas; and Elliot Richardson, Attorney General of the United States, all hereinafter referred to as "Customs", seek a finding by this Court that Customs officers are not bound by processes and orders of a state court which seek to control goods in Customs bond.

Defendant Victor M. Guerra, a resident of Hidalgo County, d/b/a Guerra Customs Bonded Warehouse; Defendant Alamo Express, Inc., a Texas Corporation; and SAIA Motor Freight Line, Inc., a Louisiana corporation, all hereinafter referred to as "Intervenors", are here seeking to protect their freight and warehouseman's liens.

Defendant Claudio Castaneda is the Sheriff of Hidalgo County.

Defendant Jud Brady, d/b/a Brady's, is a resident of Hidalgo County, Texas, and transacts an export business in the state of Texas.

Defendant Ken Kellar, d/b/a Exports, Inc., a Washington corporation, is a resident of the state of Washington and transacts an exporting business in the state of Texas.

Since the year 1968, the Bank has loaned substantial sums of money to Hendrix to finance its inventory. These loans were backed by a secured lien in favor of the Bank on Hendrix' assets, which, because of the nature of its exporting business, were continually changing. When Hendrix became unable to pay the amounts due on its notes, the Bank filed suit against Hendrix on April 25, 1973, in the 93rd District Court of Hidalgo County, Case # B26651, seeking foreclosure of the lien and a money judgment in the amount of $295,465.97, plus costs. On the motion of the Bank, the state court sequestered all of Hendrix' assets located in either Hendrix' own warehouse or the Guerra's Custom Bonded Warehouse in Hidalgo County. As will be discussed later, other goods that were in transit at the time of this sequestration would also become involved.

The Bank and Hendrix continued to work out their problems and soon reached a now controversial "compromise agreement" on May 22, 1973, wherein Hendrix admitted its debt to the Bank and agreed to the entry of a judgment against itself in the state lawsuit in the sum of $295,465.97, plus costs, interest and attorneys' fees. The judgment was to be paid out of the proceeds of the sale of the above sequestered goods to Brady and Kellar, the buyers that the Bank had located. The sequestration was to expire on entry of the judgment, and Hendrix agreed that it would issue the necessary documents to effectuate the sale. In the meantime, however, Hendrix could also sell the goods on its own if, prior to June 2, 1973, Hendrix could find a buyer willing to pay more than the $230,000.00 that the Bank's buyers had offered. The compromise agreement further stated that the judgment would also foreclose the Bank's lien on all of Hendrix' property not sequestered by the court's order, but this part of the judgment would not take effect until ninety days after the signing of the compromise agreement, giving the Bank an option should Hendrix fail to carry out as agreed the sale of the sequestered goods. The Bank additionally had the right to foreclose immediately on these other non-sequestered assets, if Hendrix tried to fraudulently remove or conceal any of its property from the reach of the Bank. Finally, the Bank agreed to fully release Hendrix from any and all indebtedness upon the payment to the Bank of $300,000.00, on or before June 1, 1973. The agreement was signed by G. H. Laube, a vice president, for the Bank, and by Mrs. Claire B. Wayne for Hendrix. The actual judgment of the state court was signed on behalf of Hendrix by Horace Hall, an attorney; the judgment was not signed by anyone on behalf of the Bank, though the name of Charles Murray, also an attorney, and the law firm of Atlas, Hall, Schwarz, Mills, Gurwitz & Bland appear in print. The judgment was duly entered on May 31, 1973.

By June of 1973, the Bank had located additional property of Hendrix in the form of bonded liquor in transit, carried by Alamo Express, Inc. in nine sealed trailers. The Bank in June, filed an application for Writ of Garnishment against Alamo Express in the 92nd District Court of Hidalgo County, Case No. A–11669. Alamo answered by way of interpleader of the Bank and the United States Bureau of Customs to determine which of the parties had rights to the merchandise contained in the trailers. This action is still pending in the state court. All parties later agreed to warehouse these goods in transit, so as to release the Alamo trailers back into line service, and this Court so ordered on August 31, 1973.

The spirit of compromise soon evaporated and relations between Hendrix and the Bank rapidly deteriorated. According to the Bank, Hendrix did not carry through with the sale of the sequestered

goods and started to dispose of its property, contrary to the compromise; fearing the loss of other secured property, the Bank, pursuant to the option contemplated in the compromise agreement, obtained Orders of Sale on June 18, 1973, directing the Sheriffs of Hidalgo and Webb Counties to hold public sales of the goods previously sequestered. Before these orders could be carried out, Mr. Palmer Kelly, Assistant United States Attorney for the Southern District of Texas, informed the Bank that Customs objected to this type of sale and suggested a reformed Order of Sale. Amended Orders of Sale that fully protected the interests of the Bureau of Customs and directed that the sales be carried out in conformity with all applicable federal laws were issued on July 6, 1973. However, on that same date, Mr. Shelby White, Acting Regional Commissioner of the United States Bureau of Customs, by letter, informed the attorneys for the Bank that, based on his understanding of relevant case law and statutes, goods in Customs bonded warehouses were not subject to any state orders, regardless of the form in which they were issued, and that Customs would simply not recognize any such orders. Pursuant to these Amended Orders of Sale, two Sheriff's sales were attempted in July of 1973, but in both instances, Customs refused to release the property despite the presence of purchasers with cash in hand who were ready to pay all customs duties and internal revenue taxes owing on said property.

On July 6, 1973, Hendrix joined the assault on the state court orders by filing its Bill of Review in the 93rd District Court of Hidalgo County, claiming that the underlying consent judgment had been obtained by a fraud on the court and was, therefore, null and void.

Despite the abundance of jurisdictional grounds, neither Hendrix nor the Bank sought removal to federal court, but this noninvolvement terminated on August 13, 1973, with the filing of two suits for a Declaratory Judgment in this Court. In the first suit, Civil Action 73–B–127, the Bank sued George P. Shultz, Secretary of the Treasury of the United States; Shelby L. White, Acting Regional Commissioner of the United States Bureau of Customs; Anthony J. P. Farris, United States Attorney for the Southern District of Texas; Elliot Richardson, Attorney General of the United States; Ben R. Hendrix Trading Co., Inc.; and Victor M. Guerra, Individually and d/b/a Guerra's Custom Bonded Warehouse.

The second federal suit, Civil Action 73–B–128, was brought by Hendrix against J. Henry Schroder Banking Corporation; Claudio Castaneda, Sheriff of Hidalgo County, Texas; Cleburne Maier, Regional Commissioner of Customs; Alamo Express, Inc.; Ken Kellar, d/b/a Exports, Inc.; and Jud Brady, d/b/a Brady's.

On January 3, 1974, a trial before the Court was held.

Notwithstanding this rather complex statement of facts, there is but one question of law around which all other issues revolve: May a state court validly order a sale of property in bonded customs warehouses pursuant to an *in personam* foreclosure suit on a secured note covering the warehoused goods?

■ Goods in bond are under the joint custody of the Collector of Customs and the warehouseman. It is this joint custody that gives rise to the fiction that the goods are not really in the host state, but are merely passing through it. Hendrix has cited to the Court a long line of cases to support this fiction and apparently reads them to mean that bonded goods are beyond state processes for all purposes. In addition, both Hendrix and Customs have cited various statutes, notably, 19 C.F.R. 19.6c, note 11, providing that:

> Imported goods in bonded warehouses are exempt from taxation or judicial processes of any State or subdivision thereof . . . .

and 28 U.S.C. § 2463:

> All property taken or detained under any revenue law of the United States

shall not be replevable, but shall be deemed to be in the custody of the law and subject only to the orders and decrees of the courts of the United States having jurisdiction thereof . . . .

and 19 U.S.C. § 1484(j):

Merchandise [in a bonded warehouse] shall be released from customs custody only to and upon the order of the carrier by whom merchandise is brought to the port at which entry is made, except that merchandise in a bonded warehouse shall be released from customs custody only to or upon the order of the proprietor of the warehouse . . . .

When read in conjunction with the cases cited by Hendrix, these statutes seem to form a diamond-hard exterior which a state court cannot penetrate. This was certainly the approach that earlier courts had taken. In Harris v. Dennie, 3 Pet. 292, 28 U.S. 292, 7 L.Ed. 683 (1830), the Court stated that:

The United States having a lien on the goods for the payment of the duties accruing thereon, and being entitled to a virtual custody of them from the time of their arrival in port until the duties are paid or secured, any attachment by a state officer is an interference with such lien and right of custody; and being repugnant to the laws of the United States, is void . . . .

But time has withered this rather singular approach. Federal Courts have acknowledged the States' right to regulate bonded merchandise for the safety of its citizens or to prevent bonded liquors from entering the stream of state commerce without prior payment of the appropriate taxes. See Epstein v. Lordi, 261 F.Supp. 921 (D.C.N.J.1966); Hostetter v. Idlewild Bon-Voyage Liquor Corp., 377 U.S. 324, 84 S.Ct. 1293, 12 L.Ed.2d 350 (1964). At the same time, however, the States have not been allowed to impose their own scheme of liquor taxation or regulation on bonded liquor in transit when that liquor is not destined for use or consumption in the warehousing state. United States v. Gudger, 249 U.S. 373, 39 S.Ct. 323, 63 L.Ed. 653 (1919); Collins v. Yosemite Park Co., 304 U.S. 518, 58 S.Ct. 1009, 82 L.Ed. 1502 (1938); Johnson v. Yellow Cab, 321 U.S. 383, 64 S.Ct. 622, 88 L.Ed. 814 (1944); Hostetter v. Idlewild Bon-Voyage Liquor Co., *supra;* Ammex Warehouse Co. v. Dept. of Alcoholic Beverage Control, 224 F.Supp. 546 (S.D. Cal.1963), aff'd 378 U.S. 124, 84 S.Ct. 1657, 12 L.Ed.2d 743. Hendrix has relied on this line of cases to support its "passing through" theory, but such reliance is misdirected. These cases did not involve bonded goods as such, but attempts by states to regulate the liquor industry, conflicts regarding state control based on the 21st Amendment and the free flow of interstate commerce. The case before this Court has nothing to do with state regulation of the liquor trade, but with adjudication of title of goods in bond which happen to be distilled spirits. The above cited cases are simply not dispositive of the questions of law raised by the pleadings.

Both Hendrix and Customs have also cited the case of McGoldrick v. Gulf Oil Corp., 309 U.S. 414, 60 S.Ct. 664, 84 L.Ed. 840 (1939). This was a non-liquor case, wherein the City of New York sought to tax sales of fuel from a bonded warehouse to ships engaged in foreign commerce. There the Supreme Court held that the state tax was invalid in light of Congressional regulation of foreign commerce. But like the liquor cases, *McGoldrick* involved interference by a state in its legislative capacity, not in its judicial capacity. Language in *McGoldrick* to the effect that such goods are not part of the common taxable mass of a state is, on its face, limited to legislative interferences with bonded goods and is inapplicable to suits between private parties where the state is acting only as an adjudicator of rights.

■ The 93rd District Court of Hidalgo County clearly had jurisdiction to entertain an *in personam* lien foreclosure, wherein the named lienholder and

the debtor were before the court. The ordered sale, however, is, under Texas law, an *in rem* proceeding, wherein the issuing court must have actual or constructive custody of the *res*. The problem that developed when the Sheriff sought as an agent of the court to enforce the judgment arose in a very similar suit in Michigan, General Exporting Co. v. Star Transfer Line et al., 136 F. 2d 329 (CA 6 1943), cert. den'd 323 U.S. 724, 65 S.Ct. 56, 89 L.Ed. 581 (1944). In that litigation, Southard and Company, Ltd., of London, sold to General Exporting Company 799 cases of imported Scotch whiskey in bond. On arrival in this country, the purchaser, General Exporting, warehoused the bonded liquor with Star Transfer Line and sold the negotiable warehouse receipts to one John McKeown. Difficulties arose when General Exporting refused to pay the purchase price to Southard and Company, Ltd. The warehouser, Star, became worried about his lien on the goods and sued Southard, General Exporting, and John McKeown in state court. The state court, after impounding the receipts, decreed that Southard was the rightful owner and ordered the warehouseman, Star, to sell the liquor in a manner that would insure that all federal tax would be protected.

Thereafter, General Exporting filed suit in federal district court against Star, Customs, and the judge that presided over the state suit, praying that the Collector of Customs be enjoined from disposing of the whiskey, that the issuing judge be enjoined from taking any further proceedings and that his decree be declared null and void. Star answered that a state court of coordinate jurisdiction had already decided the issues, and that these same issues should not now be re-litigated in federal court. Customs answered that their only interest was in the collection of duties potentially owing to the United States, but that they would not be bound by orders of a state court which tried to dispose of bonded goods. The federal district court dismissed the suit for want of jurisdiction. On appeal, the Sixth Circuit held that such dismissal was proper. In so holding, it recognized that Customs custody of bonded goods is not exclusive and that state courts can act to settle title disputes involving bonded goods. It further sanctioned the remedy used by the state court: the impounding of the negotiable receipts and the mandated sale of the spirits by the warehouseman.

This Court finds that the *Star* case is similar to the one before the Court in several critical aspects: both cases involved goods in bond which were the subject of a final judgment of a state court; in both cases, the state court issued process and ordered a sale of the goods, and in both cases, Customs, along with a claiming owner who had been dispossessed of title by a state court, argued that state courts cannot exercise any jurisdiction over goods in bond, as jurisdiction is limited to the federal courts. The Sixth Circuit was not persuaded by the arguments concerning federal preemption and the commerce clause of the constitution, and held that state courts may effect any remedy that is not in conflict with the federal interests in the area. It brushed aside the exclusive custody arguments and referred to the cases cited to it to support such arguments, one of which was Harris v. Dennie, *supra*, as "ancient authority that furnishes no true guidance toward the disentanglement of the involved issues in the case at bar".

This Court is convinced that the solution reached in the *Star* case is the proper one for the parties before this Court. State courts are just as competent as this court to foreclose secured liens between private parties. Given that they have the power to adjudicate, they also have the right to enforce their judgments by the means of court ordered sales. Such sales must protect the tax liens of the United States and in all other aspects conform to the applicable federal regulations. The original state court order in the case before this Court apparently did not protect those interests and another order had to be drawn up.

■ ■ The Amended Order of Sale was more than adequate in its protection of the tax interests of the United States, but it contained one fatal flaw: it was not directed to the warehouseman, nor could it have been since the warehouseman was not a named party in the original suit, nor was he interpled, nor did he intervene. He was not before the court and was, therefore, not subject to its decree. This failure to join the warehouseman is critical in light of the Department of Treasury regulations governing the release of goods in bond, particularly 19 U.S.C. § 1484(j), which specifically provides that goods "shall be released from customs custody only to or upon the order of the proprietor of the warehouse". This regulation is part of a comprehensive scheme governing the management of goods in bond and must be complied with by any court seeking to control such goods. In the *Star* case, the warehouseman was a party to the suit before the state court, and the court's decree was, in part, addressed to him. But such is not the case in this suit. The state judgment in our state suit is, therefore, unenforceable as against the warehouseman and Customs, and they need not comply with it as written.

■ Hendrix seeks to distinguish the *Star* case on factual and procedural grounds. As to the facts, Hendrix claims that the goods in the *Star* case were intended to be imported into the United States, whereas the goods in the case before this Court were bound for export, and, in fact, could not ever be legally imported into the United States because of their failure to comply with federal Food and Drug requirements. While there is indeed a factual difference between goods merely resting on American soil and goods that are not only resting on our soil but are also going to enter the domestic stream of commerce, the courts have not found this difference to be legally significant and generally recognize the power of the states to control both types of goods consistent with federal statutes. Epstein v.

Lordi, *supra;* Hostetter v. Idlewild Bon-Voyage Liquor Co., *supra.*

Hendrix also asserts a procedural distinction, in that there was an actual impoundment of negotiable warehouse receipts in the *Star* case, while in the case before this Court, there was no such impoundment. This is surely a distinction without a difference. The state court does not have to choose, from among the various processes at its command, the same form of process that was used in *Star* to bring itself within the purview of the *Star* holding. What is involved here is the basic question of whether or not a court may issue any type of process over bonded goods; this Court is not concerned with the exact type of process employed.

■ Hendrix has cited the provisions of the 1947 General Agreement on Trade and Tariffs, a treaty commonly referred to as GATT, to further support its "passing through" theory. Article V does have some bearing:

1. Goods (including baggage), and also vessels and other means of transport, shall be deemed to be in transit across the territory of a contracting party when the passage across such territory, with or without trans-shipment, warehousing, breaking bulk, or change in the mode of transport, is only a portion of a complete journey beginning and terminating beyond the frontier of the contracting party across whose territory the traffic passes. Traffic of this nature is termed in this Article 'traffic in transit'.

2. There shall be freedom of transit through the territory of each contracting party, via the routes most convenient for international transit, for traffic in transit to or from the territory of other contracting parties. No distinction shall be made which is based on the flag of vessels, the place of origin, departure, entry, exit or destination, or on any circumstances relating to the ownership of goods, of vessels or of other means of transport.

3. Any contracting party may require that traffic in transit through its territory be entered at the proper custom house, but, except in case of failure to comply with applicable customs laws and regulations, such traffic coming from or going to the territory of other contracting parties shall not be subject to any unnecessary delays or restrictions and shall be exempt from customs duties and from all transit duties or other charges imposed in respect of transit, except charges for transportation or those commensurate with administrative expenses entailed by transit or with the cost of service rendered.

Hendrix claims that though this is a presidential agreement, it has been given force and effect by the courts and that such force and effect are necessary for a free flow of goods in foreign commerce. Hendrix also argues that if state interference with foreign commerce were allowed, then the constitutional grant to the executive of the conduct of foreign policy would be frustrated. Two observations here seem relevant. First, GATT was not in force during the *Star* case cited above; second, and more important, the Article quoted proscribes "unnecessary delays or restrictions". This Court finds that a delay in the transit of the goods in bond caused by a lien foreclosure suit on a note secured by those goods is a necessary delay. To hold otherwise would allow GATT—V to become a haven for debtors who then become beyond the reach of any law, state or federal.

▮ There remains the question of what can now be done. The Court must assume that the two principal parties, Hendrix and the Bank, have knowingly and voluntarily chosen to litigate their financial differences in the state courts. The 93rd District Court of Hidalgo County has assumed jurisdiction of a matter of which this Court has concurrent jurisdiction, but comity requires that the suit be allowed to run its course in the state court system. Questions of fraud and failure to comply with the

statutory scheme for Sheriff's sales are questions that must be litigated in the state courts. This Court is not a forum for appellate review of state district court judgments, nor can it correct litigants' failure to bring in necessary parties to that suit, such as the warehouseman.

I, therefore, find that on the authority of General Exporting Co. v. Star Transfer et al., 136 F.2d 329 (CA 6 1943), cert. den'd 323 U.S. 724, 65 S.Ct. 56, 89 L.Ed. 581 (1944), the 93rd District Court of Hidalgo County did have jurisdiction to hear the foreclosure suit that was before it and to enter any orders necessary to protect its jurisdiction or to effectuate its judgments, so long as the orders are directed to the proper parties and comply with the federal statutes regulating the release of bonded goods from bonded warehouses. I further find that the two Amended Orders of Sale did not comply with those federal statutes, particularly 19 U.S.C. § 1484(j), in that the warehouseman was not a party to the original state suit and was not, therefore, subject to the orders of the state court. The Amended Orders of Sale are, therefore, unenforceable as against Customs or the warehousemen. As Hendrix and the Bank originally chose to litigate the lien foreclosure in state court and as the state court accepted jurisdiction of that suit, the parties must return to the state forum to settle their differences.

In light of the validity of the state court processes issued over the bonded goods, this Court finds that it is unnecessary to grant the Bank's request for an injunction; for the same reason, this Court finds that it would be inappropriate to grant the Bank's Writ of Mandamus to compel the release of the bonded goods.

In summary, this suit started out and continues to be a lien suit between two private corporations. It involves the state not in its executive or legislative roles, but only in its judicial capacity. This alone distinguishes it from most of the authority cited to support the "pass-

ing through" theory. The state court foreclosed a lien and ordered a sale of the secured goods; Customs officials refused to draw up the necessary instruments to effectuate that sale, claiming that they were not bound by state court orders. While it is clear that the state could entertain the *in personam* action to foreclose the lien, its judgment must protect federal tax interests, as well as comply with Customs statutes regulating the release of goods in bond.

■ Whether a good is in a state or merely passing through depends on the interest being protected. There is ample case authority which holds that *liquor* in bond is not in a state for state taxing purposes; at the same time, and not in conflict with the above, there is also ample authority that *goods* in bond are present in a state for purposes of *in personam* lien foreclosures between two private parties. Final destination of goods and compliance with Food and Drug laws for packaging and the like doesn't really change the status of .a bonded good. Bonded chattels on their way to Mexico have the same legal character as bonded chattels on their way to Arkansas and are controlled by the same body of federal regulations. Finally, imperfection in the state judgment, such as the alleged fraud, are matters for the state appellate system.

There remains for ·disposition the intervening claims of the carriers and the warehousemen. Their claims are amply protected under the existing Customs regulations, and nothing in this Memorandum or the Judgment being entered herein will in any way prejudice their liens, and the Bureau of Customs is hereby directed to see that the liens of the Intervenors here, Victor M. Guerra, d/b/a Guerra Customs Bonded Warehouse, Alamo Express, Inc. and SAIA Motor Freight Line, Inc., are fully protected under the law.

A Judgment in accordance with this Memorandum is this day being entered.

## JUDGMENT

In accordance with the Memorandum of this date in the above entitled and numbered cause, this Court declares that the 93rd District Court of Hidalgo County, Texas, did have jurisdiction to entertain the case of Schroder v. Hendrix, Cause #B 26651, and to issue all processes necessary to protect its jurisdiction or effectuate its judgments so long as those processes complied with Customs regulations. This Court further declares that the two Amended Orders of Sale of July. 6, 1973, did not comply with Customs regulations and are unenforceable. Plaintiff Schroder Banking Company's requests for an injunction and a Writ of Mandamus are hereby denied.

The causes above cited are hereby dismissed and dropped from the docket of this Court, without prejudice to the rights of the parties to these lawsuits to enforce their rights either in the state courts or under the Customs laws and regulations.

## SUPPLEMENTAL MEMORANDUM

This Court entered its Memorandum on the 22nd day of ·February, 1974, and entered Judgment in accordance with said Memorandum on the same date, in the above entitled and numbered causes. Within the time allotted by the rules, three of the parties have filed motions regarding said Memorandum, which are now before the Court.

The Federal Defendants, who, in fact, can be lumped into the Bureau of Customs, are complaining that this Court did nothing by its Memorandum with regard to its Order of August 31, 1973. They also seek an Order from this Court that the Bureau of Customs and individual Customs officials be exonerated from liability from following either the Orders of this Court or of the State Court.

Alamo Express, Inc. has filed its Motion to Modify or Amend Judgment, also

complaining of the fact that this Court did not dispose of its Order of August 31, 1973, and asking that the legal custody and possession of the merchandise warehoused pursuant to that Order be released to them, so that it will be in a position to file a Bill of Interpleader in State Court to secure an adjudication of the rights of all the parties to the goods warehoused.

J. Henry Schroder Banking Corporation has filed a Motion for a New Trial or To Amend Findings and Judgment. One of their main contentions is that the Webb County Order of Sale sold merchandise located only at the warehouse at 1714 Faragot Street, Laredo, Texas, and that this warehouse is owned and operated by Ben R. Hendrix Trading Company, Inc., the original Defendant in the 93rd District Court of Hidalgo County, Texas. While this may be true, the Order of Sale out of the 93rd District Court did not order the warehousemen to sell the property, but instead ordered the Sheriff of said county to sell the property, and their request that I amend my findings and judgment to validate that Order of Sale is denied. Their Motion for a New Trial is also denied. What this Court held by its Memorandum of February 22nd, to which reference is hereby made for all purposes, was that the 93rd Judicial District Court of Hidalgo County, Texas, had jurisdiction to adjudicate the title to the goods in question. The Judgment of that Court foreclosed a lien on the goods belonging to Ben R. Hendrix Trading Company, Inc., which included not only goods that were already warehoused, but those goods which were in the trucks of Alamo Express, Inc. and which were warehoused upon the agreed Order entered by this Court on August 31, 1973. That Order should now be dissolved, and the legal custody of said goods is now returned to Alamo Express, Inc., and for the purpose of complying with Customs regulations, to the warehousemen where they are now located.

Having found and declared that the 93rd Judicial District Court of Hidalgo County, Texas, had jurisdiction over the goods in question, the Bureau of Customs and its officials must comply with the lawful Orders of that Court with regard to the disposition of the goods in question. The Bureau of Customs and its individual officials are exonerated from any liability for complying with the lawful Orders of that State Court or of this Court.

This Court has indicated that in accordance with Bureau of Customs regulations, if the 93rd Judicial District Court of Hidalgo County, Texas, wants to dispose of said goods, it must direct its Order to the warehousemen, and in the case of the goods which were being transported by Alamo Express, Inc., to the warehousemen and Alamo Express, Inc. In other words, this Court now holds that all of said goods belonging to Ben R. Hendrix Trading Company, Inc. are in *custodia legis* of 93rd Judicial District Court of Hidalgo County, Texas, and they cannot be disposed of, unless upon Orders of that Court lawfully entered, to comply with Customs regulations.

At the time of entering its Memorandum of February 22nd, a further application to intervene was filed in this Court by Francisca Recio de Vela, Individually and as Independent executrix of the Estate of E. G. Vela, Deceased, in which it was claimed certain warehouseman's charges and expenses in connection with the storage of certain wines and alcoholic spirits which were in part the subject of the above suits. Their right to intervene is hereby granted. They, however, stand in the same shoes as the other intervening carriers and warehousemen, and the Bureau of Customs is hereby directed to see that the liens of the Intervenors, Victor M. Guerra, d/b/a Guerra Customs Bonded Warehouse, Alamo Express, Inc., SAIA Motor Freight Line, Inc. and Francisca Recio de Vela, In-

dividually and as Independent Executrix of the Estate of E. G. Vela, Deceased, are fully protected under the law.

The question of whether the Judgment giving rise to the foreclosure Orders of the 93rd Judicial District Court of Hidalgo County, Texas, is valid or not apparently is still in litigation, but that is a matter for the State Courts, as previously held in my Memorandum of February 22nd. An Amended Judgment, in compliance with my Memorandum of February 22nd and this Supplemental Memorandum, is this day being entered.

The Clerk will send copies of this Supplemental Memorandum, together with the Amended Judgment, to counsel for the parties.

## AMENDED JUDGMENT

In accordance with the Memorandum of February 22, 1974, and the Supplemental Memorandum of this date in the above entitled and numbered causes, this Court declares that the 93rd Judicial District Court of Hidalgo County, Texas, did have jurisdiction to entertain the case of Schroder v. Hendrix, Cause #B 26651, and to issue all processes necessary to protect its jurisdiction or effectuate its judgments, so long as those processes complied with Customs regulations.

This Court further declares that the two Amended Orders of Sale of July 6, 1973, did not comply with Customs regulations and were and are unenforceable. Plaintiff J. Henry Schroder Banking Corporation's requests for an injunction and a Writ of Mandamus to the Bureau of Customs and its officials are hereby denied.

The Order of this Court of August 31, 1973, is hereby dissolved and the legal possession of the goods which were the subject of that warehousing order is declared to be in Alamo Express, Inc. and, for the purpose of complying with Customs regulations, in the warehousemen with whom the goods were placed. Having found that the goods in question are in *custodia legis* of the 93rd Judicial District Court of Hidalgo County, Texas,

the Bureau of Customs and its officials are hereby ordered not to release said goods, except upon orders duly issued by the said 93rd Judicial District Court, which orders shall comply with Customs regulations, in accordance with this Court's Memorandum, and the United States Bureau of Customs and its officials are hereby exonerated from any and all liability for refusing to honor the Orders of Sale heretofore held void in this Court's Memorandum of February 22nd, or for obeying further orders of the 93rd Judicial District Court or from obeying the order of this Court.

Further disposition of the goods in question must be sought by the parties in the 93rd Judicial District Court of Hidalgo County, Texas, which this Court has found has *custodia legis* of said goods. This Judgment is binding on all parties as to those things declared by this Court, and is a Final Judgment herein.